**MAIER'S BAKERY, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (SANDT), Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 7, 2000.
Decided May 11, 2000.

Francis P. Fitzsimmons, Philadelphia, for petitioner.

Karl P. Voigt IV, Bechtelsville, for respondent.

Before McGINLEY, J., FLAHERTY, J., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Maier's Bakery (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a workers' compensation judge (WCJ) denying Employer's petition to modify compensation payable to Russell Sandt (Claimant). We affirm.

Claimant sustained a work-related injury on February 22, 1995. Employer accepted liability for the injury by way of a notice of compensation payable that provided for compensation at the weekly rate of $509.00, based on an average weekly wage of $1087.91.

At the time of his injury, Claimant was one of three individuals with the job title of "breakman." Throughout his employment with Employer, Claimant volunteered for and worked very significant amounts of overtime. As a result of this high level of overtime, Claimant earned significantly more in 1995 than the other two breakmen, who elected to work less overtime.

Claimant returned to work in April of 1996, again as one of three breakmen employed at the bakery. As a result of union contracts, the hourly wage of breakmen has increased since 1995. However, due to Claimant's work injury, Claimant is restricted to working no more than forty hours per week. For forty hours of work, Claimant receives pay of approximately $600.00 per week. Because that pay is less than Claimant's pre-injury average weekly wage, he receives partial disability benefits in the average amount of $330.00 per week.[1]

Since 1995, there has been no change in the availability of overtime work. When the other two breakmen elect to work substantial amounts of overtime, they earn significantly more than Claimant receives in wages and partial disability compensation. However, when the other breakmen elect to work little or no overtime, they earn less than Claimant receives in salary and benefits.

On June 24, 1997, Employer filed a petition to modify Claimant's rate of compensation, pursuant to Section 306(b)(1) of the Workers' Compensation Act (Act).[2] As amended in 1996, Section 306(b)(1) provides in part:

(1) [I]n no instance shall an employe receiving compensation under this section receive more in compensation and wages combined than *the current wages of* a fellow employe in employment similar to that in which the injured employe was engaged at the time of injury.

1. The record reflects that the parties execute supplemental agreements regularly, to modify Claimant's compensation rate in accordance with changes in his weekly earnings.

2. Act of June 2, 1915, P.L. 736 *as amended,* 77 P.S. § 512(1).

77 P.S. § 512(1) (emphasis added). The italicized language was added in 1996; prior to that change, the wage comparison was fixed as of the date of injury.

Employer sought to reduce Claimant's benefits for any week that Claimant's combined receipt of wages and compensation exceeds the current wages of the other two breakmen. Following hearings and having found the facts as summarized above, the WCJ denied Employer's petition, concluding that Employer failed to prove that Claimant's combined earnings in any week exceed the earnings of a "similarly situated" employee. The WCJ concluded that the only reason that Claimant sometimes earns more in combined wages and partial disability benefits than the other two breakmen is that Claimant always was a very industrious employee who worked a great deal of overtime, which resulted in a high average weekly wage. The WCJ concluded that the legislature did not intend that an injured worker's · compensation should be reduced based on a co-worker's voluntary election to work less overtime. The WCJ did not decide whether or not the 1996 amendment to the Act should be retroactively applied, opining that the result would be the same in either case.

Employer appealed to the Board, arguing that Claimant's overtime was irrelevant to the determination of whether his fellow employees were engaged in "similar employment." The Board affirmed the

WCJ's decision, relying on *Pennsylvania Power Co. v. Workmen's Compensation Appeal Board (Kelly)*, 122 Pa.Cmwlth. 36, 551 A.2d 386 (1988), *appeal denied*, 523 Pa. 638, 656 A.2d 446 (1989).[3] The Board also observed that overtime earnings are properly included in the calculation of a claimant's average weekly wage. *Harper & Collins v. Workmen's Compensation Appeal Board (Brown)*, 543 Pa. 484, 672 A.2d 1319 (1996). Finally, the Board concluded that the 1996 amendment to Section 306(b)(1) is to be applied retroactively.[4]

On appeal to this Court,[5] Employer argues that the Board erred in concluding that Claimant's employment was not similar to that of the other breakmen on the grounds that Claimant is unable to work more than forty hours per week due to his work injury. Employer maintains that the particular job being performed is dispositive of this issue. Employer continues to assert that the issue of overtime ·is irrelevant to the determination of whether other employees are engaged in "employment similar to that in which [Claimant] was engaged at the time of injury." 77 P.S. 512(b)(1).

We must reject Employer's argument, as Pennsylvania courts have held that the plain language of the Act requires that overtime earnings be included in the calculation of a claimant's average weekly wage. *Harper & Collins;*[6] *Pennsylvania Power*

---

**3.** In *Pennsylvania Power Co.*, the court held that claimants who traditionally worked overtime were entitled to partial disability compensation for the period in which they were temporarily denied overtime as a precaution from further injury, even though their combined wages and compensation exceeded the total wages received by some of their fellow employees engaged in the same type of employment.

**4.** As the Board noted, the 1996 amendment rewrote the former text of Section 306(b), designating it as subsection (1), and adding subsections (2) and (3). Section 32.1(a) of the Act of June 24, P.L. 350 (Act 57), provides that the addition of clause (2) of this section shall apply only to claims for injuries suffered on or after the effective date of the amend-

ment. Because the added language at issue here is contained in clause 1, the Board concluded that the legislature intended it to apply retroactively.

**5.** Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa. Cmwlth. 436, 550 A.2d 1364 (1988).

**6.** In *Harper & Collins*, the claimant's loss of earnings was not caused by her injury, but by the employer's decision to eliminate overtime

*Co.; Duquesne Light Co. v. Workmen's Compensation Appeal Board (Klein),* 77 Pa.Cmwlth. 67, 465 A.2d 81 (1983). A reduction of Claimant's present benefit rate based on Employer's argument that overtime earnings are now irrelevant would have the impermissible effect of retroactively eliminating Claimant's overtime earnings from the calculation of his average weekly wage.

Employer complains that Claimant receives combined earnings of $930.00 per week, while employees performing the same job duties earn only $600.00 per week. Employer argues that this is precisely the situation that the addition of the words "current wages" was intended to address. We disagree.

 Instead we believe that the relevant portion of Act 57 was designed to eliminate the inequities that could result when an injured worker returns to a workplace that has been affected by some type of economic distress. In such circumstances, should an employer be forced to reduce wages, overtime, or available hours of employment, a claimant's benefits may be reduced to conform with and not exceed the wages earned by similarly situated employees. The addition of the words "current wages" means that a claimant's compensation may now be reduced based on a subsequent reduction in wages applicable to similarly situated employees. In the present case, however, wages for the position of breakman actually increased after Claimant's injury.

 We agree with Claimant that in addition to a worker's duties, "hours of employment" is a significant factor that must be considered when determining sim-

ilarity of employment. Here we compare the situation of an employee who historically worked on average approximately twenty hours more per week than his fellow breakmen. We conclude that Claimant's singular history of working overtime distinguished his employment from that of his two co-workers. Moreover, contrary to Employer's assertion, a reduction of Claimant's compensation in this case would not be based strictly upon a comparison of job title or duties, but instead would result from the personal decisions made by Claimant's co-workers each week.

Accordingly, we affirm the order of the Board.

### ORDER

NOW, May 11, 2000, the order of the Workers' Compensation Appeal Board, at No. A97–5321, dated June 29, 1999, is affirmed.

---

for all employees. The Supreme Court held that the claimant was entitled to partial disability benefits because she had not fully recovered from her injury, she remained unable to resume her pre-injury job, and she was not earning wages equal to her pre-injury average weekly wage. The court held that the employer's economic decision to eliminate overtime had no bearing on the calculation of benefits.

Although *Harper & Collins* was decided prior to the passage of Act 57 and the issue before that court was different from the matter before us, the decision makes clear that the overtime earnings of a claimant must be considered when determining the rate of compensation payable. In addition, the *Harper & Collins* court emphasized the remedial purpose of the Act and noted that borderline interpretations are to be construed in the claimant's favor.