**John HINKLE, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (GENERAL ELECTRIC COMPANY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 7, 2002.

Decided Oct. 21, 2002.

John W. Bitonti, Washington, for petitioner.

Donald F. Fessler, Jr., Erie, for respondent.

Before: SMITH–RIBNER, Judge, SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SIMPSON.

John Hinkle (Claimant) appeals from the decision of the Workers' Compensation Appeal Board (Board) that affirmed the decision of the Workers' Compensation Judge (WCJ) terminating his benefits. We are asked to consider whether the WCJ erred in twice amending Claimant's challenge petition, and whether the termination of benefits is supported by substantial unequivocal medical evidence. For the reasons that follow, we affirm.

Claimant suffered a work-related injury in September 1994 while working for General Electric Company (Employer) as a welder. Employer issued a notice of compensation payable, describing the injury as a "contusion left heel, left ankle sprain" and Claimant received benefits. Several supplemental agreements were executed by the parties agreeing to various periods of partial disability. The most recent agreement, dated May 1995, acknowledged that Claimant became totally disabled as of that date.

In April 1998, Claimant returned to work with Employer as a machine operator, a different position, but at the same rate of pay as his pre-injury job. He worked three days before stopping work.

In May 1998, he returned to a job in Employer's shipping department at a lesser rate of pay. At the time he returned to work, Claimant was treated by William Paul Diefenbach, M.D., for a non-work-related back injury and was not treated for his work-related ankle injury.[1]

Employer issued a notification of suspension pursuant to Section 413(c) of the Workers' Compensation Act (Act),[2] alleging that as of April 1998, Claimant returned to work at wages equal to or greater than his pre-injury job. Claimant filed a challenge to the notification of suspension as permitted by Section 413(c).

At the initial special supersedeas hearing in May 1998, the WCJ indicated that he would treat the challenge as a petition for suspension. Significantly, neither party objected. In December 1998, Employer asked that the proceedings include a request for termination based upon medical evidence that Claimant fully recovered from his work-related injury. Again, the "amendment" was permitted without objection. Four more hearings were held between December 1998 and March 2000, during which both parties submitted medical evidence on the issues of suspension and termination.

Claimant submitted the medical report of Vincent Rogers, M.D., who treated Claimant in April 1998 and January 1999. Dr. Rogers reported that Claimant continued to suffer left ankle pain that was most severe over the surgical scar, that the pain radiated into his foot and that Claimant had difficulty moving the foot and ankle normally. The x-rays Dr. Rogers took indicated Claimant had degenerative changes in the ankle and mild arthritis. Dr. Rogers opined that Claimant's limited range of motion and pain was caused by the surgery for his work-related injury, that Claimant enjoyed a reasonable range of motion and that nothing more could be done for him.

Employer submitted the medical report of S.R. Sellaro, D.O., F.A.O.C.A., dated January 1999. Dr. Sellaro conducted an evaluation in April 1998 for the purpose of determining whether Claimant could return to work at a machining job with Employer. He opined that Claimant's left ankle injury completely healed and that there were no residual left ankle limitations. Dr. Sellaro stated that Claimant agreed with his conclusion. The doctor advised Claimant that any job changes would have to be approved because of Claimant's lumbar history.

Employer also submitted a report and videotape of surveillance conducted on Claimant in May 1998. The tape shows Claimant operating a rototiller, bending at the waist, carrying flats of plants, kneeling and pushing a wheelbarrow. Claimant was not wearing an ankle brace or using any other medical device during the videotaped surveillance.

Claimant testified at two hearings. He testified that he tolerates various job duties such as computer work, jitney work and moving skids, but that such positions pay less that his pre-injury job, and that he incurred a wage loss. Claimant admitted that he was treated for his back injury and not his ankle problem when released

---

**1.** Claimant had filed a petition to review the notice of compensation payable to have included in the description of the September 1994 work-related injury, an injury to his lower back. The WCJ ruled that the low back injury was not related to Claimant's work injury and denied the petition.

**2.** Act of June 2, 1915, P.L. 736, *added by* the Act of July 1, 1978, P.L. 692, *as amended,* 77 P.S. § 774.2

to return to work. Claimant stated that he has good and bad days with this ankle. Everyday he wears an ankle brace prescribed by Dr. Rogers and takes medication when the pain is bad.

The WCJ issued an interlocutory supersedeas, suspending Claimant's benefits in February 1999. Following the close of evidence, the WCJ issued an opinion in October 2000, terminating Claimant's benefits. The WCJ specifically found Claimant not to be credible or persuasive, particularly where his claims were inconsistent with the complaints made to Dr. Rogers and inconsistent with his testimony. The WCJ also found that Claimant's testimony was inconsistent with his appearance in the surveillance tape. The WCJ was not persuaded by Claimant's testimony that his ankle condition contributed to his physical restrictions.

The WCJ also found Dr. Sellaro more credible than Dr. Rogers and accepted as fact Dr. Sellaro's testimony that Claimant fully recovered from his work-related left ankle injury as of April 1998. He concluded that any residuals to the ankle or restrictions were related to a pre-existing arthritic condition and to the non-work-related back problem. He found that Claimant was able to return to work with Employer without restrictions. As a result, the WCJ concluded that Employer had met its burden of proving an entitlement to a termination of benefits as of April 1998.

Claimant appealed to the Board. The Board found no error and affirmed the WCJ. Claimant appealed.[3]

■ Claimant first asserts that the only issue in an employee challenge after a Section 413(c) suspension of benefits is whether the employee has returned to work at prior or increased earnings. He submits that it was improper for the WCJ to convert his challenge into a request for suspension because it increased his burden of proof and introduced medical and other irrelevant evidence into the proceedings. Claimant argues that Employer never produced evidence that he was earning wages equal to or greater than his time of injury wages.

■ This issue causes us to re-examine the effect of the 1996 amendments to Section 413 of the Act. The amended Section 413(c) [4] permits an employer to unilaterally

---

3. This Court's review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. *Udvari v. Workers' Compensation Appeal Bd. (USAir, Inc.)*, 550 Pa. 319, 705 A.2d 1290 (1997).

4. Section 413(c) of the Act, 77 P.S. § 774.2, provides:

Notwithstanding any provision of this act, an insurer may suspend the compensation during the time the employe has returned to work at his prior or increased earnings upon written notification of suspension by the insurer to the employe and the department, on a form prescribed by the department for this purpose. The notification of suspension shall include an affidavit by the insurer that compensation has been suspended because the employe has returned to work at prior or increased earnings. The insurer must mail the notification of suspension to the employe and the department within seven days of the insurer suspending compensation.

(1) If the employe contests the averments of the insurer's affidavit, a special supersedeas hearing before a workers' compensation judge may be requested by the employe indicating by a checkoff on the notification form that the suspension of benefits is being challenged and filing the notification of challenge with the department within twenty days of receipt of the notification of suspension from the insurer. The special supersedeas hearing shall be held within twenty-one days of the employe's filing of the notification of challenge.

suspend benefits without filing a formal suspension petition upon affidavit that a claimant has returned to work at prior or increased earnings. A claimant can contest the suspension and request an expedited special supersedeas hearing without filing a formal answer or petition. The 1996 amendment was meant to streamline procedures in those cases where there is no dispute that a claimant has returned to work. *See U.S. Airways v. Workers' Compensation Appeal Bd. (Rumbaugh),* 808 A.2d 1064 (Pa.Cmwlth.2002).

Problems arise when a claimant requests a hearing at which new issues appear. Within the context of the present case, we are asked to decide how the WCJ may restructure the proceedings to embrace new issues. More specifically, we are asked how the issues may be designated where neither party has filed a formal petition or answer.

The WCJ is allowed to waive or modify the special rules of practice. 34 Pa.Code § 131.3(a). However, where there is neither formal petition nor formal answer, an oral amendment carries the dual risks of imprecision and digression. In special supersedeas cases, which require expedited resolution, the mischief from digression and concomitant delay is particularly pronounced. For this reason, we view with disfavor oral amendments in special supersedeas cases, and we encourage WCJs to require written petitions to memorialize issues beyond those expressly excused from formal pleadings by statute. Nevertheless, our interpretation of the Act does not compel a different result here.

The WCJ allowed oral amendments of Claimant's challenge into a petition for suspension and later into a petition for termination. Not surprisingly, the May 1998 special supersedeas issue remained unresolved until February 1999. Claimant failed to preserve the amendment issue by timely objection, however.

When the WCJ advised Claimant in May 1998 that he would treat the challenge as a suspension petition, Claimant did not object. Also, when evidence became available in December 1998, that Claimant fully recovered from his work-related injury, he did not object to a further amendment to a termination petition. In fact, the parties acted in conformance with the amendments. Claimant's failure to timely object deprived the WCJ of the opportunity to cure any error. Claimant may not raise on appeal issues not presented to the WCJ without sacrificing the integrity, efficiency and orderly administration of the workers' compensation scheme of redress for work-related injuries. *Dobransky v. Workers' Compensation Appeal Bd. (Continental Baking Co.),* 701 A.2d 597 (Pa.Cmwlth. 1997). Accordingly, Claimant has waived the issue. *Mearion v. Workers' Compensation Appeal Bd. (Franklin Smelting & Refining Co.),* 703 A.2d 1080 (Pa.Cmwlth. 1997).

Likewise, we find no merit in Claimant's second argument, that the WCJ's decision to terminate benefits was based upon equivocal medical evidence. It is well settled that the WCJ is the ultimate finder of fact and the arbiter of witness credibility. *Universal Cyclops Steel Corp. v. Workmen's Compensation Appeal Bd.,* 9 Pa.Cmwlth. 176, 305 A.2d 757 (1973). The WCJ is free to accept or reject, in whole or in part, the testimony of any witness, in-

(2) If the employe does not challenge the insurer's notification of suspension within twenty days under paragraph (1), the employe shall be deemed to have admitted to the return to work and receipt of wages at prior or increased earnings. The insurer's notification of suspension shall be deemed to have the same binding effect as a fully executed supplemental agreement for the suspension of benefits.

cluding a medical witness. *George Canavan v. Workers' Compensation Appeal Bd. (B & D Mining Co.)*, 769 A.2d 1250 (Pa. Cmwlth.2001). However, whether medical testimony is equivocal is a conclusion of law fully reviewable by this Court. *Id.*

Based upon the medical testimony of Dr. Sellaro that the WCJ accepted as credible, the WCJ found as fact that Claimant fully recovered from his work-related left ankle injury as of April 1998 and that any residuals to the ankle or restrictions were related to the pre-existing arthritic condition and to the non-work related back problem. Upon review of the testimony of the physician, we conclude that the statement is clear and unequivocal as to the work-related injury. The only restrictions placed upon Claimant were non-work-related, and thus we agree that Employer had met its burden of demonstrating by unequivocal medical evidence that Claimant's work-related injury had fully resolved.

---

5. Claimant also argued that video surveillance is not competent evidence upon which to base a finding that an employee is physically able to return to his time of injury job. We need not address this argument, because we conclude that there is unequivocal medical evidence that supports the termination of Claimant's benefits.

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 774.2, *added by* the Act of July 1, 1978, *as amended*. Section 413(c) states the following, in pertinent part:

   Notwithstanding any provision of this act, an insurer may suspend the compensation during the time the employe has returned to work at his prior or increased earnings upon written notification of suspension by the insurer to the employe and the department, on a form prescribed by the department for this purpose. The notification of suspension shall include an affidavit by the insurer that compensation has been suspended because the employe has returned to work at prior or increased earnings. The insurer must mail the notification of suspension to the employe and the depart-

We find no error of law and conclude that the termination of benefits is supported by unequivocal, substantial medical evidence.[5] Accordingly, the order of the Board is affirmed.

## ORDER

AND NOW, this 21st day of October, 2002, the order of the Workers' Compensation Appeal Board is hereby affirmed.

CONCURRING OPINION BY Senior Judge KELLEY.

I concur in the result reached by the majority.

Like the majority, I believe that the Claimant waived any objection to the WCJ's treatment of his challenge under Section 413(c) of the Workers' Compensation Act (Act)[1] as a request for a suspension and termination by the Employer under Section 413(a) of the Act[2]. *See*

---

ment within seven days of the insurer suspending compensation.

   (1) If the employe contests the averments of the insurer's affidavit, a special supersedeas hearing before a workers' compensation judge may be requested by the employe indicating by a checkoff on the notification form that the suspension of benefits is being challenged and filing the notification of challenge with the department within twenty days of receipt of the notification of suspension from the insurer. The special supersedeas hearing shall be held within twenty-one days of the employe's filing of the notification of challenge.
   77 P.S. § 774.2(1).

2. Section 413(a) of the Act provides, in pertinent part:

   A workers' compensation judge may, at any time, review and modify or set aside a notice of compensation payable and an original or supplemental agreement or upon petition filed by either party with the department, or in the course of the proceedings under any petition pending before such workers' compensation judge, if it be proved that such notice of compensation

Majority Opinion at 1040. As noted by the majority, the Claimant failed to object to the WCJ's actions in this regard at any time throughout the proceedings. *See Id.* at 1037–39. I write separately, however, because I strongly disagree with the dicta expressed by the majority with respect to the propriety of the WCJ's actions in this regard. *See Id.* at 1040.[3]

Pursuant to Section 413(a) of the Act, a WCJ may, at any time, modify, reinstate, suspend, or terminate a claimant's compensation benefit awarded pursuant to a notice of compensation payable, an original or supplemental agreement or an award of the WCJ, upon the filing of a petition by either party. Pursuant to Section 413(a.1)[4] of the Act, the filing of such a petition acts as an automatic request by an

---

> payable or agreement was in any material respect incorrect.
>
> 77 P.S. § 771.
>
> Section 413(a) also provides, in pertinent part:
>
>> A workers' compensation judge designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its workers' compensation judge, upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed. Such modification, reinstatement, suspension, or termination shall be made as of the date upon which it is shown that the disability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or upon which it is shown that the status of any dependent has changed ... And provided further, That where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, unless it be shown that the loss in earnings does not result from the disability due to the injury.
>
> 77 P.S. § 772.

**3.** Specifically, the majority states the following, in pertinent part:

> The WCJ is allowed to waive or modify the special rules of practice. 34 Pa.Code § 131.3(a). However, where there is neither formal petition nor formal answer, an oral amendment carries the dual risks of imprecision and digression. In special supersedeas cases, which require expedited resolution, the mischief from digression and

concomitant delay is particularly pronounced. For this reason, we view with disfavor oral amendments in special supersedeas cases, and we encourage WCJs to require written petitions to memorialize issues beyond those expressly excused from formal pleadings by statute. Nevertheless, our interpretation of the Act does not compel a different result here.

> *Id.*

**4.** Section 413(a.1) of the Act provides, in pertinent part:

> (1) The filing of a petition to terminate, suspend or modify a notice of compensation payable or a compensation agreement or award as provided in this section shall automatically operate as a request for a supersedeas to suspend the payment of compensation fixed in the agreement or the award where the petition alleges that the employe has fully recovered and is accompanied by an affidavit of a physician on a form prescribed by the department to that effect, which is based upon an examination made within twenty-one days of the filing of the petition. A special supersedeas hearing before a workers' compensation judge shall be held within twenty-one days of the assignment of such petition. All parties to the special supersedeas hearing shall have the right to submit, and the workers' compensation judge may consider testimony of any party or witness; the record of any physician; the records of any physician, hospital, clinic or similar entity; the written statements or reports of any other person expected to be called by any party at the hearing of the case; and any other relevant materials. The workers' compensation judge shall rule on the request for supersedeas within seven days of the hearing and shall approve the request if prima facia evidence of a change in the medical status

employer for a supersedeas where the petition alleges that the claimant is fully recovered and it is accompanied by a physician's affidavit to that effect. Section 413(a.1) further provides that, at the hearing on this automatic request for a special supersedeas, "[a]ll parties to the special supersedeas hearing shall have the right to submit, and the [WCJ] may consider testimony of any party or witness; the record of any physician; the records of any physician, hospital, clinic or similar entity; the written statements or reports of any other person expected to be called by any party at the hearing of the case; and any other relevant materials." 77 P.S. § 774(1).

In addition, and quite importantly, Section 413(a.1) also provides that an employer is entitled to such a supersedeas from the payment of compensation benefits only when it establishes "[p]rima facia evidence of a change in the medical status or of any other fact which would serve to modify or terminate payment of compensation ...", and only if the claimant fails to establish "[b]y a preponderance of the evidence, a likelihood of prevailing on the merits of his defense ..." 77 P.S. § 774(1). This provision is in line with the general proposition that once an employer has accepted liability for a work-related injury, it may not cease the payment of compensation benefits in the absence of a supplemental agreement, a final receipt or a WCJ's order. *See, e.g., Gillis v. Workers' Compensation Appeal Board (Willits Roofing, Inc.)*, 725 A.2d 257, 259–260 (Pa.Cmwlth. 1999) ("[T]he law is well settled that an employer who is obligated to pay a claimant benefits can cease paying benefits if it

satisfies any of the following conditions: (1) submits a supplemental agreement pursuant to Section 408 of the Act, 77 P.S. § 732; (2) submits a final receipt signed by the claimant pursuant to Section 434 of the Act, 77 P.S. § 1001; (3) secures an interlocutory order from a WCJ granting a discretionary supersedeas pursuant to Sections 413(a.1) and 413(a.2) of the Act, 77 P.S. § 774; (4) files a petition to suspend compensation with an accompanying affidavit from the insurer that the claimant has returned to work at wages greater than or equal to his pre-injury wage pursuant to Section 413(c) of the Act, 77 P.S. § 774.2; or (5) secures a final order from a WCJ terminating a claimant's benefits. *Sheridan v. Workers' Compensation Appeal Board (Anzon, Inc.)*, 713 A.2d 182 (Pa.Cmwlth.1998). Until one of the above events occurs, an employer is under a continuing obligation to pay a Claimant benefits properly owed to him. *Id.*").

In contrast, Section 413(c) of the Act confers upon an employer the power to unilaterally suspend a claimant's compensation benefits, without a prior hearing or a WCJ's determination, based upon an allegation that the claimant has returned to work at his prior or increased wages. Subsection (1) of Section 413(c) permits the claimant to challenge this unilateral suspension by requesting a special supersedeas hearing. Unlike Section 413(a.1), Section 413(c) does not contain any all-encompassing evidentiary provision. This is quite logical as the factual allegations underlying a Section 413(c) are extremely limited; namely, the claimant's return to work at his prior or increased wages.[5]

---

or of any other fact which would serve to modify or terminate payment of compensation is submitted at the hearing, unless the employe establishes, by a preponderance of the evidence, a likelihood of prevailing on the merits of his defense ...

77 P.S. § 774(1).

5. *See also* Section 131.50a of the Department's regulations governing hearings conducted pursuant to Section 413(c), which states the following:

(a) This section governs the disposition of an employe's request for a special supersedeas hearing made in connection with a

Thus, unlike the majority, I believe that where an employer seeks a suspension, modification or termination of a claimant's disability benefits for reasons unrelated to those encompassed in Section 413(c) of the Act, that employer should be required to file the appropriate petition under Section 413(a) and to proceed accordingly. By opening a Section 413(c) hearing to irrelevant issues and evidence, the majority would allow an employer to unilaterally suspend a claimant's disability benefits under Section 413(c), only to proceed on a different Section 413(a) theory at the hearing. All the while, the claimant's benefits have been suspended, and the employer has availed itself of a supersedeas to which it is not entitled. In short, Section 413(c) provides a very limited form of self-help to employers based upon a very limited factual predicate. I firmly believe that the dicta expressed by the majority would inappropriately expand the provisions of Section 413(c) beyond these quite limited boundaries. Nonetheless, as properly noted by the majority, the Claimant has waived any allegation of error in this regard.

Accordingly, like the majority, I believe that the Board's order should be affirmed.

challenge to the suspension or modification of workers' compensation benefits under section 413(c) and (d) of the act (77 P.S. §§ 774.2 and 774.3).

(b) A special supersedeas hearing will be held within 21 days of the employe's filing of the notice of challenge.

(c) The workers' compensation judge to whom the notice of challenge has been assigned will issue a written order on the challenge within 14 days of the hearing.

(d) If the judge fails to hold a hearing within 21 days or fails to issue a written order approving the suspension or modification of benefits within 14 days of the hearing, the insurer shall reinstate the employe's workers' compensation benefits at the weekly rate the employe received prior to the insurer's suspension or modification of benefits under section 413(c) or (d) of the act.

34 Pa.Code § 131.50a.