**Gem BROWN, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (KNIGHT RIDDER, INC./ PHILADELPHIA NEWSPAPERS, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 2, 2004.

Decided Aug. 19, 2004.

---

Robert Land, Philadelphia, for petitioner.

Thomas C. Lowry, Plymouth Meeting, for respondent.

BEFORE: SMITH–RIBNER, Judge, and SIMPSON, Judge, and CHARLES P. MIRARCHI, JR., Senior Judge.

## OPINION BY Judge SIMPSON.

Questioning the computation of her earning power, Gem Brown (Claimant) petitions for review from an order of the Workers' Compensation Appeal Board (Board). The Board affirmed a modification of Claimant's benefits under the Workers' Compensation Act (Act).[1] We affirm.

Claimant was employed part-time by Knight Ridder, Inc./Philadelphia Newspapers, Inc. (Employer) as a mailer. Workers' Compensation Judge (WCJ) Finding of Fact (F.F.) No. 1. After a fall at work in January 1998 in which she injured her right arm and elbow, Claimant began receiving workers' compensation benefits based on her average weekly wage with Employer of $404.95.[2] F.F. No. 2.

Employer knew about Claimant's part-time work with it, but Employer did not know Claimant simultaneously worked *full time* as a bookkeeper/accounting assistant for another company, PMI Imaging (PMI). F.F. No. 3. Claimant did not report her concurrent employment with PMI on her LIBC–750 form[3] or to her insurance company adjusters, rehabilitation nurse, or her treating physician, Dr. John Bednar. F.F. No. 4.

In August 1998, following surgery, Dr. Bednar cleared Claimant to return to light-duty work. F.F. No. 5. Claimant informed Dr. Bednar no light-duty work was available in Employer's mailroom. *Id.* In October 1998, Dr. Bednar cleared Claimant to return to her previous job as a mailer. Claimant returned to work for Employer for one day but testified she experienced numbness in her hand, left, and did not return. F.F. No. 7.

During the entire period she was off work with Employer, Claimant continued her full-time employ with PMI.[4] F.F. No. 6. Claimant completed an undated LIBC–760 form in which she stated she worked at PMI "temporary, part time when needed about 20 hrs. week (*sic*)" from August 7, 1998 to April 16, 1999. F.F. No. 8; C.R., Employer's Exhibit 5. Claimant admitted this information was inaccurate and underreported the extent of her work at PMI. F.F. No. 8.

Claimant testified she worked full-time at PMI from March 1992 through August

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2051–2626.

2. Claimant's medical condition is not in dispute here.

3. This form is titled "Employee Report of Wages" and requires employees receiving benefits to report earnings from employment or self-employment. Certified Record (C.R.), Employer's Exhibit 2.

4. Claimant testified she missed two days' work immediately following her injury and one week's work following her surgery; however, she did not experience any wage loss at PMI. F.F. No. 6.

1999, at which time she stopped working for PMI because her department was relocating. F.F. No. 9. Claimant immediately began working for Equity One Mortgage (Equity One). This work continued until October 1999, when she left because of job dissatisfaction and not because of any medical ailments or impairments. *Id.* Claimant then began working for Accounting Principals, performing temporary accounting assignments. *Id.*

After leaving Equity One, Claimant filed a petition to review her compensation benefits, seeking to have her average weekly wage changed to reflect her concurrent employment at PMI. Immediately thereafter, Employer filed a petition to modify or suspend Claimant's benefits, asserting she was receiving total disability benefits while employed with a different employer and seeking reimbursement and/or credit for overpayment.

Following hearings, the WCJ granted Claimant's petition, finding her average weekly wage at the time of her injury was $960.31 based on her concurrent employment with Employer and PMI. F.F. No. 12. The WCJ denied Employer's suspension petition.

However, the WCJ granted Employer's modification petition. Based on various calculations, the WCJ determined Employer made significant overpayments to Claimant for which it was entitled to credit. F.F. No. 12. The WCJ set forth a schedule for reduction of Claimant's weekly benefit until the overpayment was recaptured. *Id.*

Significant here, the WCJ established Claimant's earning capacity as $644.23 per

week. This was based on Claimant's testimony that she voluntarily left the position at Equity One (that paid $644.23 per week) due to job dissatisfaction unrelated to her work injury. F.F. No. 10.

Claimant appealed to the Board, which affirmed. Claimant then appealed to this Court,[5] asserting the WCJ erred in assigning her an earning capacity based on her brief employ with Equity One and in modifying her benefits on an annual basis rather than week-by-week. We address each argument in turn.

Claimant first assigns error in the manner used to prove earning power. She asserts the WCJ erred in assigning an earning power where the Employer failed to present evidence of either job referrals, in accordance with *Kachinski v. Workmen's Comp. Appeal Bd. (Vepco Constr. Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), or a report from a qualified vocational expert in accordance with 77 P.S. § 512(2), added to the Act by what is commonly known as Act 57.[6]

Employer does not contest that it failed to present evidence of job referrals or a report from a qualified vocational expert. However, Employer asserts there is no such requirement where, as here, the claimant performed actual jobs for which she was paid after the work-related injury. We agree with Employer.

Act 57 states in pertinent part that, " 'Earning power' shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the department, pri-

---

5. This Court's review is limited to a determination of whether necessary findings of fact are supported by substantial evidence, whether the Board's procedures were violated, whether constitutional rights were violated, or whether an error of law was committed.

Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Bey v. Workers' Comp. Appeal Bd. (Ford Elecs.)*, 801 A.2d 661 (Pa. Cmwlth.2002).

6. Act of June 25, 1996, P.L. 350.

vate job placement agencies and advertisements in the usual employment area." 77 P.S. § 512(2). Claimant argues this language required Employer to introduce an expert report to establish earning power. Essentially, then, Claimant challenges the competency of Employer's evidence of earning power.

Claimant overlooks another statutory provision, 77 P.S. § 512(1). That provision states earning power "shall in no case be less than the weekly amount which the employe receives after the injury."

The apparent conflict between the statutory provisions addressing "earning power" renders those provisions capable of more than one meaning and therefore ambiguous. As a result, we resort to statutory construction to ascertain legislative intent. *Milton S. Hershey Med. Ctr. of the Pennsylvania State Univ. v. Med. Prof'l Liab. Catastrophe Loss Fund*, 573 Pa. 74, 82, 821 A.2d 1205, 1210 (2003) ("Where a statute is ambiguous, we are guided by rules of statutory construction to determine the intent of the General Assembly.").

■ Every statute shall be construed, if possible, to give effect to all its provisions. 1 Pa.C.S. § 1921(a). We can give effect to both provisions relating to proof of earning power by construing the language relied upon by Claimant, 77 P.S. § 512(2), as pertaining to proof of earning power in an amount not covered by a claimant's actual wages. Thus, expert reports are needed to prove earning power where there is no

credible evidence of wages received, or to prove earning power in an amount greater than wages received. Expert reports are not necessary in situations addressed by 77 P.S. § 512(1) to prove earning power in an amount shown by credible evidence to have been received.

This construction is consistent with existing case law which does not require evidence of either a *Kachinski* job referral or Act 57 expert opinion evidence to establish earning power where a claimant works and receives wages after the initial injury. In several post-Act 57 cases, this Court affirmed a WCJ's assignment of earning power based on a claimant's wages after a return to the workforce where the employer did not submit expert opinion evidence. For example, in *Lane v. Workers' Comp. Appeal Bd. (Eljer Plumbing)*, 780 A.2d 801 (Pa.Cmwlth.2001), we affirmed a calculation of earning power based on actual post-injury wages earned by the claimant, without the employer presenting any evidence of job referrals or expert opinion. In *Carpenter Tech. Corp. v. Workers' Comp. Appeal Bd. (Santoro)*, 751 A.2d 710 (Pa. Cmwlth.2000), we similarly permitted reliance on the claimant's post-injury wages to calculate earning power where the employer did not present expert opinion evidence.[7]

■ Considering the foregoing, we hold wages actually received for work performed is competent evidence of earning power entitled to be considered by the fact-finder.[8] As with other evidence, the

7. Compare *Trimmer v. Workers' Comp. Appeal Bd. (Monaghan Township)*, 728 A.2d 438, 440 (Pa.Cmwlth.1999) (noting, "earning power of a working claimant can be established by expert vocational testimony based on wages paid for the same work in the geographic area during the relevant time frame *where there is no credible evidence of the claimant's actual earnings.*" (emphasis added)).

8. We reached a similar conclusion in *Burrell v. Workers' Comp. Appeal Bd. (Phila. Gas Works and Compservices, Inc.)*, 849 A.2d 1282 (Pa.Cmwlth.2004). There, we addressed whether an employer was required to submit evidence of job vacancies of the employer, pursuant to 77 P.S. § 512(2), where the claimant returned to work. We stated, "[W]e hold that where a claimant unilaterally dem-

fact-finder will determine credibility and weight. Thus, Employer here was not required to submit evidence of job referrals or expert opinion to establish earning power in the amount of wages Claimant actually received for work performed. Claimant's absurd argument to the contrary is rejected.

Claimant also argues that, even if the WCJ were correct to assign earning power, he should use the wages Claimant currently earns with Accounting Principals rather than her wages with Equity One. We find no merit in this argument, which essentially challenges the weight assigned to evidence by the fact-finder.

■ Decisions about the weight of evidence are within the exclusive province of the WCJ. *Altoona Wholesale Distrib. v. Workers' Comp. Appeal Bd. (Bell)*, 841 A.2d 651 (Pa.Cmwlth.2004). The WCJ's determinations of the weight to be given the evidence presented will not be disturbed on appeal. *Haynes v. Workers' Comp. Appeal Bd. (City of Chester)*, 833 A.2d 1186 (Pa.Cmwlth.2003).

■ Actual wages are among the factors to be considered in determining earning power. *Stofa v. Workers' Comp. Appeal Bd. (Florence Mining Co.)*, 702 A.2d 381 (Pa.Cmwlth.1997). *See also Roadway Express, Inc. v. Workmen's Comp. Appeal Bd. (Connery)*, 110 Pa.Cmwlth.535, 532 A.2d 1241 (1987).

■ As previously noted, earning power, "shall in no case be less than the weekly amount which the employe receives after the injury." 77 P.S. § 512(1). However, our Supreme Court instructs that earning power "can, in some cases, be more than the employee is receiving in

actual wages after the injury." *Harle v. Workmen's Comp. Appeal Bd. (Tel.Press, Inc.)*, 540 Pa. 482, 488, 658 A.2d 766, 769 (1995). Further, "benefits for partial disability are payable to remedy loss caused by a work-related injury *but are not payable if the loss is due to factors other than such injury.*" *Id.* at 489, 658 A.2d at 769 (emphasis added). Where a claimant refuses a valid job offer, his benefits can be modified if he had no basis for doing so. *Kachinski*, 516 Pa. at 252, 532 A.2d at 380.

The crux of Claimant's argument is that the WCJ erred in using the higher Equity One wages to establish her earning power, where her current wages at Accounting Principals are lower. However, as noted above, earning power may be higher than the actual wages Claimant receives.

■ Also, Claimant testified she left the job at Equity One due to job dissatisfaction unrelated to her work injury. The difference in wages between the Equity One job and Claimant's current job is, therefore, due to a factor other than Claimant's job injury. Claimant's earning power remains affected by her injury to the extent that she cannot return to her second job with Employer, and the WCJ correctly awarded partial benefits on that basis. However, Claimant's lower salary at Accounting Principals arises from her choice to leave the higher-paying position with Equity One due to job dissatisfaction. Therefore, that wage loss is not due to Claimant's work-related injury, and Claimant may not receive benefits for the difference in salaries between the two jobs. For these reasons, the WCJ did not err in assigning Claimant an earning power

onstrates residual productive skill, an employer need not address existence of positions it may have as part of its case-in-chief." *Id.* at 1287. Similarly here, where Claimant's re-

turn to work demonstrates her residual productive skill, Employer is not required to admit expert evidence of job availability under 77 P.S. § 512(2).

based on her higher earnings at Equity One.

 Claimant next argues the WCJ erred in modifying her weekly wage-loss benefits on an annual, rather than week-by-week, basis. Because Claimant failed to raise this argument before the WCJ and the Board, it is waived.

 The strict doctrine of waiver is applicable to workers' compensation proceedings. *Dobransky v. Workers' Comp. Appeal Bd. (Cont'l Baking Co.)*, 701 A.2d 597 (Pa.Cmwlth.1997). An issue not raised before the WCJ is waived. *Id.*

The record fails to reveal that Claimant argued to the WCJ that her wage-loss benefits should be calculated on a week-by-week basis. Claimant's failure to raise the issue before the WCJ deprived the WCJ of the opportunity to cure any error. *Hinkle v. Workers' Comp. Appeal Bd. (Gen.Elec.Co.)*, 808 A.2d 1036 (Pa.Cmwlth. 2002). Permitting Claimant to raise the issue for the first time on appeal would, "sacrific[e] the integrity, efficiency and orderly administration of the workers' compensation scheme...." *Id.* at 1040.

Moreover, Claimant failed to raise this issue before the Board. Therefore, it is twice waived. *Mearion v. Workers' Comp. Appeal Bd. (Franklin Smelting & Ref. Co.)*, 703 A.2d 1080 (Pa.Cmwlth.1997) (any issue not raised before the Board is waived and will not be heard by this Court on appeal).

Accordingly, Claimant waived the issue of whether her benefits should be calculated on a week-by-week basis rather than an annual basis by failing to raise it before the WCJ or the Board. We will not address it for the first time on appeal.

For the foregoing reasons, we affirm.

Judge SMITH–RIBNER concurs in the result only.

*ORDER*

AND NOW, this 19th day of August, 2004, the order of the Workers' Compensation Appeal Board in the above-captioned case is affirmed.