Lori COONEY, Petitioner,

v.

## WORKERS' COMPENSATION APPEAL BOARD (St. Joseph's Center), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 12, 2001.
Decided June 20, 2001.

---

Thomas E. Lucas, Jr., Scranton, for petitioner.

Kevin J. O'Hara, Scranton, for respondent.

Before DOYLE, President Judge, SMITH, Judge, and FLAHERTY, Senior Judge. ·

SMITH, Judge.

Lori Cooney petitions for review of an order of the Workers' Compensation Appeal Board (Board) that vacated in part a decision by a Workers' Compensation Judge (WCJ) granting Cooney's petitions to set aside a final receipt and to join St. Joseph's Center (St. Joseph's) and the

State Workmen's Insurance Fund (SWIF). Cooney contends that the Board erred as a matter of law in determining that her petition to set aside the final receipt was time barred by the three-year statute of limitations and that the Board erred in affirming the WCJ's decision not to award attorney's fees to her.

I

Cooney suffered a work-related right-wrist sprain and carpal tunnel syndrome of the right wrist on April 1, 1991 in the course of her employment as a resident technician for St. Joseph's. St. Joseph's issued a notice of compensation payable acknowledging the injury on November 13, 1991. Cooney received treatment for her injury from Dr. Eugene J. Chiavacci, and he referred Cooney to Dr. Adel Baraket, who performed surgery on her right wrist in June 1992. Cooney returned to work on January 4, 1993 with continued earnings loss, and the parties executed a supplemental agreement modifying her benefits. After speaking with SWIF adjuster Mary Kay Curtis sometime in 1993, Cooney executed a final receipt which acknowledged that she was able to return to work on March 1, 1993 without loss of earnings.[1] Cooney executed the final receipt on the understanding that her medical bills would continue to be paid. After signing the final receipt, Cooney continued to incur medical bills related to her right hand and wrist, which were paid by SWIF on St. Joseph's behalf.

In October 1993 Cooney began working at Gerrity's Supermarket (Gerrity's), initially as a part-time wrapper and later as a baker. On August 15, 1996, Cooney's pain in her right hand and wrist became unbearable while she was pressing down on a dough cutter. Dr. Chiavacci referred Cooney to Dr. Mark N. Perlmutter, who recommended that Cooney undergo repeat median nerve decompression surgery. Cooney scheduled a tentative date to have the surgery performed, but when Cooney spoke with a SWIF representative to verify coverage, SWIF refused to pay for it. Cooney was forced to cancel the surgery because she could not afford to pay for it herself. Cooney continues to work for Gerrity's.

In February 1997 Cooney filed claim petitions against St. Joseph's alleging that she suffered a work injury on April 1, 1991 and against Gerrity's alleging that she suffered a work injury on August 15, 1996. In both petitions, Cooney sought payment of medical expenses. St. Joseph's admitted the April 1991 injury but denied that Cooney suffered specific loss. Gerrity's denied the allegations. The claim petitions along with the corresponding joinder petitions were consolidated for hearing purposes before a WCJ. The claim petition against St. Joseph's was later amended to a petition to set aside the final receipt.

The WCJ credited the testimony of Cooney and of Dr. Perlmutter, who opined that Cooney's present condition is the result of her April 1991 injury. With regard to the issue of fraud, the WCJ found that, when SWIF presented Cooney with the final receipt, Curtis had a January 19, 1993 report from Dr. Barakat indicating that Cooney could return to her duties with no restrictions. The report did not, however, state that Cooney was fully recovered, and Curtis did not have the April 22, 1993 note

---

1. The WCJ's findings did not resolve a factual dispute concerning when Cooney signed the final receipt. However, determination of the exact date when the receipt was signed is not necessary to the outcome of this case. The testimonies of Cooney, Curtis and SWIF claims receiver Eric Jones all indicate that Cooney signed the final receipt around July 30, 1993.

from Dr. Barakat which indicated that Cooney had reduced gripping strength and pinching power in her right hand. A SWIF claims reviewer credibly testified that Cooney told him that she would sign the final receipt to avoid further litigation. Most importantly, Cooney was not fully recovered at the time when she signed the final receipt.

■ The WCJ rendered a single decision, dismissing the petitions against Gerrity's, setting aside the final receipt and directing St. Joseph's to pay Cooney's medical expenses and to pay the costs of litigation. The WCJ found that St. Joseph's had a reasonable basis for the contest and therefore did not award attorney's fees. The Board vacated the WCJ's decision setting aside the final receipt on grounds that the petition to set aside the final receipt was barred by the three-year statute of limitations set forth in Section 434 of the Workers' Compensation Act (Act),[2] 77 P.S. § 1001. The Board, however, concluded that St. Joseph's remained liable for Cooney's medical expenses, relying upon *Fuhrman v. Workmen's Compensation Appeal Board (Clemens Supermarket)*, 100 Pa.Cmwlth.577, 515 A.2d 331 (1986), for the proposition that payment for medical expenses is not governed by any statute of limitations.[3]

## II

■ Cooney first contends that the Board erred in finding that the three-year statute of limitations in Section 434 bars her petition to set aside the final receipt

because that statute of limitations should run from the date when SWIF last paid Cooney's medical bills. Section 434 provides:

A final receipt, given by an employe or dependent entitled to compensation under a compensation agreement notice or award, shall be prima facie evidence of the termination of the employer's liability to pay compensation under such agreement notice or award: Provided, however, That a referee designated by the department may, at any time within three years from the date to which payments have been made, set aside a final receipt, upon petition filed with the department, or on the department's own motion, if it be shown that all disability due to the injury in fact had not terminated.

■ The reference to "payments" in the phrase "three years from the date to which payments have been made" clearly refers to the "liability to pay compensation" mentioned previously in the Section. Thus the question before the Court is whether the term "compensation" as used in Section 434 includes medical expenses. It is well settled that the term "compensation" as used in the Act must be interpreted on a section-by-section basis. *Bellefonte Area School District v. Workmen's Compensation Appeal Board (Morgan)*, 156 Pa.Cmwlth.304, 627 A.2d 250 (1993), *aff'd*, 545 Pa. 70, 680 A.2d 823 (1994). This Court examined the term as it is used in the statute of limitations of Section 434 in *Fuhrman* and concluded that the term does not include medical expenses. While

---

**2.** Act of June 2, 1915, P.L. 736, *as amended,* added by Section 6 of the Act of June 26, 1919, P.L. 642. The three-year limitations period appears in Section 434 of the Act as amended by Section 14 of the Act of December 5, 1974, P.L. 782.

**3.** The Court's review of the Board's order is limited to determining whether the necessary findings of fact are supported by substantial evidence in the record and whether there was an error of law or a constitutional violation. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa. Cmwlth.436, 550 A.2d 1364 (1988).

the Court did not consider the use of the term in the context of when the limitations period begins to run, the Court sees no reason to adopt two contrary definitions of the term within the same section. This also accords with the Court's interpretation of statutes of limitation in other sections of the Act. *See O'Brien v. Workers' Compensation Appeal Board (Montefiore Hospital),* 690 A.2d 1262 (Pa.Cmwlth.1997) (holding that the term "compensation" does not include medical expenses for purposes of the running of the three-year statute of limitations in Section 413 of the Act, 77 P.S. § 772).

■ Cooney next argues that the Board erred in determining that SWIF did not commit fraud in the preparation of the final receipt. The statute of limitations in Section 434 of the Act is not a bar to obtaining benefits if the claimant proves that the final receipt was obtained by fraud, intentional or unintentional deception or other improper action of the employer. *Crawford v. Workmen's Compensation Appeal Board (Peugot Contracting),* 134 Pa.Cmwlth.89, 577 A.2d 966 (1990). The Workers' Compensation Bureau regulation relating to termination by final receipt, found at 34 Pa.Code § 121.17(a), provides in pertinent part:

> If an injured employe has recovered from his injury so that he has regained his full earning power, and so that all disability due to the injury has terminated, a final receipt may be fully prepared for signature. The fact that the employe returns to similar work at his original or greater wage unaccompanied by a showing that all disability has terminated is not a basis for a final receipt. However, it may be the basis for a suspension of compensation.

■ Where an insurance company prepares a final receipt knowing that the claimant has recovered from his or her injuries to regain full earning power but still suffers residual disability and the claimant signs without knowing the significance of the final receipt, the insurance company's actions constitute fraudulent conduct which warrants setting aside the final receipt. *Crawford.* Section 434 and 34 Pa.Code § 121.17(a) create an affirmative duty on the insurance company to know that the requirements for a final receipt have been met before the receipt may be lawfully prepared and presented to a claimant.

■ In this case, the WCJ found that SWIF prepared and presented a final receipt based upon a report which stated only that Cooney was able to return to work without restrictions. SWIF had no basis to further conclude that Cooney was fully recovered. Curtis knew that even though Cooney had returned to work, Cooney still believed that her injury required medical treatment. Curtis had no basis to dispute Cooney's belief. In fact, SWIF continued to pay for Cooney's ongoing medical care without dispute until 1996. Cooney's testimony, which the WCJ credited, establishes that SWIF sent her multiple copies of the final receipt. Cooney signed the final receipt only to avoid litigation after Curtis assured her that the final receipt was just to stop the cash payments and that her medical expenses would continue to be paid. SWIF's preparation and presentation of the final receipt to Cooney without a proper basis constitutes fraud that warrants setting aside the final receipt. Accordingly, the Board erred in reversing the WCJ.[4] The order of the

---

4. While the WCJ did not expressly state that SWIF committed fraud, the WCJ did discuss the issue and made sufficient findings to establish that SWIF's actions constituted fraud. Lastly, Cooney contends that the Board and the WCJ erred in concluding that St. Joseph's

Board therefore is reversed, and the WCJ's order is reinstated.

### ORDER

AND NOW, this 20th day of June, 2001, the order of the Workers' Compensation Appeal Board is reversed, and the order of the Workers' Compensation Judge is hereby reinstated.

DOYLE, President Judge Dissenting.

I respectfully dissent because, after a careful review of the record and the parties' briefs, I am absolutely convinced that Cooney's appeal is utterly without merit.

The *only* issue before this Court on appeal from the Board involves the petition to set aside the final receipt that Cooney signed at the request of her previous employer, St. Joseph's Center. Originally, this petition to set aside had been in the form of a claim petition, in which Cooney sought medical benefits and benefits for the specific loss, or loss of use, of a bodily part under Section 306(c) of the Act,[1] 77 P.S. § 513. Cooney never filed a claim for benefits for partial or total disability at any time. Moreover, she never pursued her claim for specific loss benefits. Therefore, the only claim which Cooney presented to the compensation authorities below was for medical benefits, and the Workers' Compensation Judge (WCJ) and the Workers' Compensation Appeal Board (Board) **both** found in Cooney's favor in that regard and awarded her medical benefits. Since Cooney is not aggrieved by the decisions of either the WCJ or the

Board with regard to the only relief she sought, why this appeal?

Despite the fact that both the WCJ and the Board awarded Cooney medical expenses, she nevertheless filed a petition for review with this Court. By her own admission, she is not appealing that portion of the Board's order that upheld the payment of her medical bills;[2] instead, she is ostensibly seeking reversal of the Board's decision insofar as it deemed her petition to be untimely filed.

Cooney's actions in bringing this appeal are, to say the least, most unusual because she has already prevailed on the underlying issue at the core of her case. As already stated, during the course of these proceedings Cooney sought payment of medical expenses, which she was awarded. Cooney never requested either partial or total disability benefits, and, while she **did** check the box for specific loss benefits on both of her claim petitions, she did not present a shred of medical testimony or other evidence that she has lost the use of her right hand, wrist, arm, or whatever. Therefore, any claim for partial, total or specific loss benefits that Cooney might have alleged and pursued in this matter has been waived, and, accordingly, the three-year statute of limitations contained in Section 434 of the Act, 77 P.S. § 1001, is a non-issue.

Cooney asks this Court to reverse the Board and to set aside the final receipt— **but why?** I suspect that the only reason the petition to set aside is in any way relevant is to secure either partial or total disability benefits **sometime in the indefinite future.**[3] Assuming that Cooney is

---

had a reasonable basis for a contest. Because of the involvement of Gerrity's and the issue concerning the statute of limitations, the Court agrees that St. Joseph's had a reasonable basis for a contest.

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1—1041.4; 2501–2626.

2. *See* Cooney's petition for review, page 1, n. 1.

3. This conclusion is supported by the statement of Cooney's attorney, Thomas Lucas, to the WCJ that, "As of right now, it is a medical only petition for a claim, but she has been

now seeking future benefits, her claim filed in February of 1997 is time-barred, since the Department of Labor & Industry received the final receipt terminating Cooney's partial disability benefits on November 5, 1993, well past the applicable three-year limitation period.[4] In this regard, the Board's decision was absolutely correct that Cooney's petition was time-barred, for all benefits except medical expenses, under Section 434 of the Act.

Moreover, on the basis of the record in this case, I respectfully further dissent from the Majority's holding that the State Workmen's Insurance Fund (SWIF) committed fraud when it obtained the final receipt, which fraud would toll the relevant limitations period.

First, the Majority acknowledges that the WCJ did not expressly state that SWIF acted fraudulently in obtaining Cooney's signature on the final receipt. In fact, the WCJ found that, in obtaining the final receipt, Mary Kay Curtis, the SWIF adjuster, had a medical release indicating that Cooney could return to work with no restrictions, but that Curtis **did not have** the medical note indicating that Cooney had reduced strength.[5] Although the WCJ concluded that Cooney was not fully recovered when she signed the final receipt, he apparently reached this determination to buttress his decision to set the

final receipt aside, not to support a finding of fraud.

The Majority states:

Where an insurance company prepares a final receipt **knowing** that the claimant has recovered from his or her injuries to regain full earning power but still suffers residual disability **and** the claimant signs without knowing the significance of the final receipt, the insurance company's actions constitute fraudulent conduct warranting setting the final receipt aside. Crawford [v. Workmen's Compensation Appeal Board (Peugot Contracting), 134 Pa.Cmwlth. 89, 577 A.2d 966 (1990) ].

*Cooney v. Workers' Compensation Appeal Board (St. Joseph's Center)*, 776 A.2d 1050 (Pa.Cmwlth.2001). (Emphasis added.) Despite this statement of the law, the WCJ made no finding here that SWIF **knew** that Cooney suffered a residual disability at the time she signed the final receipt, whereas, in *Crawford*, the referee[6] specifically concluded that the final receipt had been fraudulently prepared and obtained. Moreover, in *Auerbach v. Workmen's Compensation Appeal Board (Auerbach)*, 80 Pa.Cmwlth.301, 471 A.2d 596 (1984), cited in *Crawford*, this Court declined to hold that the referee's findings that the claimant did not know the signifi-

scheduled to have surgery on her hand, at which time she will indeed miss some time from work due to the surgery and the recovery period from that." (Notes of Testimony, June 20, 1997, p. 4.) Attorney Lucas also indicated that it was unclear as to when Cooney would undergo the surgery, since it had been scheduled twice and cancelled both times. *Id.*

**4.** As the Majority has explained, the term "compensation" in Section 434 does not include medical expenses, citing *Fuhrman v.*

*Workmen's Compensation Appeal Board (Clemens Supermarket)*, 100 Pa.Cmwlth.577, 515 A.2d 331 (1986), *appeal dismissed*, 518 Pa. 59, 540 A.2d 267 (1988).

**5.** Admittedly, this note was seemingly written before Cooney signed the final receipt, although the record is not definitive as to when the receipt was signed.

**6.** Prior to the 1993 amendments to the Act, WCJs were known as referees.

cance of the final receipt and did not actually know what he was signing, in and of themselves, supported a determination that the claimant signed the document by way of deception. Simply stated, there is no legitimate basis to hold that, due to fraud or deception, the final receipt signed by Cooney should be set aside.

For all of the reasons set forth above, I respectfully dissent and would affirm the judgment of the Board.[7]

7. Although my dissent is certainly not based on this procedural defect, I note that the Majority's order wholly reverses the Board's decision and reinstates the WCJ's opinion, even though the Board's order vacated the WCJ's order only insofar as the WCJ granted Cooney's petition to set aside the final receipt, and the Board affirmed the WCJ's order in all other respects.