Joseph DONAHUE, Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (PHILADELPHIA GAS WORKS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 4, 2004.

Decided July 22, 2004.

Reconsideration Denied Sept. 14, 2004.

Annabelle R. Cedar, Philadelphia, for petitioner.

Charlene S. Barnaba, Philadelphia, for respondent.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and MIRARCHI, Jr., Senior Judge.

OPINION BY Judge LEAVITT.

Joseph Donahue (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) refusing to reinstate Claimant's suspended benefits or to impose penalties on Claimant's employer for suspending benefits. In so adjudicating, the Board affirmed the decision of a Workers' Compensation Judge (WCJ) that the suspension was appropriate because otherwise Claimant would have been compensated at a higher level than employees doing the work he was doing at the time of his injury.

On December 19, 1999, Claimant sustained a left shoulder and lower back strain in the course and scope of employment with Philadelphia Gas Works (Employer). Pursuant to a Notice of Compensation Payable (NCP), Claimant received weekly indemnity benefits at the rate of $588 based upon an average weekly wage of $1,133.30. On November 20, 2001, Claimant returned to employment at his

pre-injury position. On November 27, 2001, Claimant received a notice that, effective November 20, 2001, his disability benefits were suspended because he had returned to work on that date at earnings equal to or greater than his time-of-injury earnings.[1] In response, on December 13, 2001, Claimant filed a Petition to Challenge the Notification of Suspension[2] and in connection therewith requested a supersedeas. On May 3, 2002, Claimant filed a Penalty Petition alleging that Employer had terminated Claimant's indemnity benefits improperly and had filed a fraudulent notification of suspension, in violation of the Pennsylvania Workers' Compensation Act (Act).[3]

At a hearing before the WCJ, Jane Elizabeth Lewis, Employer's Director of Risk Management, testified. She explained Employer's procedures for recalculating partial disability benefits, which include giving notice to employees of the changes and an opportunity to challenge the calculation. Employer developed this adjustment procedure to eliminate disparities in compensation between employees doing the same work. Department heads were reluctant to offer light duty employment to employees on disability because the combination of wages and partial disability often resulted in total compensation in excess of that earned by fellow employees, thereby causing resentment. Lewis testified that "a lot of people were bringing home up to $200, $300, $400 more money . . . for doing the same work, as the guys next to them." Reproduced Record 16a (R.R. ——). ·

To address this problem, Employer developed a weekly report to document the earnings of each employee for each week in each job classification. This report produced an average weekly wage for all employees in the same job classification. In any case that partial disability benefits plus actual earnings do not coincide with the average weekly wage earned by others with the same job classification, adjustments are made. Specifically, if wages alone are less than the average per classification, an employee is paid the difference between the average and actual earnings, tax free. If wages plus partial disability benefits are less than the average per classification, the employee is paid two-thirds of the difference between the average weekly wage and actual wages. In a week where wages alone exceed the average compensation per classification, partial disability benefits will be suspended.

This adjustment procedure was applied to Claimant when he returned to work on November 20, 2001. Because Claimant's actual wages that week exceeded the average wage for his job classification, his partial disability benefits were suspended.[4] Thereafter, Employer issued weekly notices as the calculations under its procedure changed.[5]

1. The notice stated that Employer was suspending or modifying benefits pursuant to Section 413(c) and (d) of the Act. *See* notes 9–10 *infra* for text of Section 413(c) and (d).

2. On March 26, 2002, Claimant was terminated *for reasons unrelated to his work injury.* Employer has a policy requiring residency in Philadelphia, and Claimant admitted he was not a resident of the City of Philadelphia.

3. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1—1041.4, 2501–2626.

4. Wages for Claimant's pre-injury position as a Service Worker D could not be paid because *no one was working at that position four weeks after Claimant returned;* everyone had been promoted. Employer therefore used the next pay grade up, C, to calculate Claimant's average weekly wage, *providing a financial benefit to Claimant.*

5. At different times during the year, the average weekly wage *changed depending on overtime.* Not surprisingly, overtime was higher during the winter months.

On cross-examination, Lewis acknowledged that with the exception of the week of January 28, 2002, Claimant did not earn a weekly wage equal to or greater than his weekly wage at the time of his injury. Lewis conceded that Claimant had not returned to work at his pre-injury wages, stating

[B]y suspension ... what was meant [was] that his entitlement to a partial was suspended. We recognized that the form was not exact but ... in lack of a better form, that's the one we used.

R.R. 38a. She explained that the Bureau of Worker's Compensation (Bureau) Form LIBC–751, which must be issued when a claimant is no longer entitled to total disability benefits, was not large enough to explain Employer's adjustment procedures. However, Employer sent a letter to Claimant with each paycheck for the week in question, explaining the calculation. Further, Employer's adjustment procedure had been reviewed by and discussed with the Bureau, the union, including the union president, and with employees.

After conclusion of hearings, the WCJ issued a decision denying Claimant's Challenge Petition and Penalty Petition. Consistent with these holdings, the WCJ denied Claimant's request for a supersedeas. The WCJ concluded that Employer's procedure, designed to eliminate disparities in wages for the same work, was authorized by Section 306(b)(1) of the Act.[6] Thus, she concluded that Claimant had failed to show that his benefits had been improperly suspended or that the suspension notice was fraudulent. The Board affirmed the WCJ, and Claimant petitioned for our review.

On appeal, Claimant presents three arguments for our consideration.[7] First, he argues that the Board erred by failing to reinstate Claimant's compensation after the WCJ did not enter an order within 14 days of the special supersedeas hearing. Second, the Board erred by not setting aside the Notice of Suspension as void because it contained false statements. Third, the Board erred by concluding the Employer properly calculated Claimant's partial disability payments without reference to Claimant's overtime.

Claimant first argues that he is entitled to reinstatement of his total disability benefits of $588 per week, which he was paid prior to receiving his suspension notice, because the WCJ failed to issue a written order by January 29, 2002, approving the suspension or modification.[8] He contends that he is owed this benefit through April

---

**6.** It states:

[I]n no instance shall an employe receiving compensation under this section receive more in compensation and wages combined than the current wages of a fellow employe in employment similar to that in which the injured employe was engaged at the time of the injury.

Section 306(b)(1) of the Act, 77 P.S. § 512(1).

**7.** The Court's review of the Board's decision is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact were supported by substantial evidence. *US Airways v. Workers' Compensation Appeal Board (Rumbaugh)*, 808 A.2d 1064 (Pa.Cmwlth.2002).

**8.** It should be noted that the Claimant's challenge before the Court is limited to the period beginning November 20, 2001 and continuing until the subsequent unchallenged Notice, *i.e.*, the following week. Employer issued Claimant weekly suspension and modification notices to reflect the calculations due under the adjustment procedure. However, Claimant did not challenge any of the subsequent weekly notices, only the first one, in his petition for review. Even if we accepted Claimant's theory that the WCJ's failure to act timely required reinstatement of his disability, it would only be applied to the one week he challenged.

25, 2003, without diminution by reason of his earnings. Claimant asserts that a regulation of the Department of Labor and Industry mandates continued disability whenever a WCJ fails to meet the deadlines for deciding a Claimant's supersedeas request.

In 1996, the Act was amended to streamline procedures in those cases where there is no dispute that a claimant has returned to work. *Hinkle v. Workers'* *Compensation Appeal Board (General Elec. Co.)*, 808 A.2d 1036 (Pa.Cmwlth. 2002). These amendments authorize an employer to suspend or modify benefits unilaterally, *i.e.*, without filing a suspension or modification petition, after an employee returns to work with no wage loss. *See* Sections 413(c)[9] and 413(d)[10] of the Act, 77 P.S. §§ 774.2, 774.3. A claimant may contest the suspension or modification and also request an expedited special supersedeas hearing, without having to file a

9. Section 413(c) of the Act, 77 P.S. § 774.2 provides:

> Notwithstanding any provision of this act, an insurer may suspend the compensation during the time the employe has returned to work at his prior or increased earnings upon written notification of suspension by the insurer to the employe and the department, on a form prescribed by the department for this purpose. The notification of suspension shall include an affidavit by the insurer that compensation has been suspended because the employe has returned to work at prior or increased earnings. The insurer must mail the notification of suspension to the employe and the department within seven days of the insurer suspending compensation.
> (1) If the employe contests the averments of the insurer's affidavit, a special supersedeas hearing before a workers' compensation judge may be requested by the employe indicating by a checkoff on the notification form that the suspension of benefits is being challenged and filing the notification of challenge with the department within twenty days of receipt of the notification of suspension from the insurer. The special supersedeas hearing shall be held within twenty-one days of the employe's filing of the notification of challenge.
> (2) If the employe does not challenge the insurer's notification of suspension within twenty days under paragraph (1), the employe shall be deemed to have admitted to the return to work and receipt of wages at prior or increased earnings. The insurer's notification of suspension shall be deemed to have the same binding effect as a fully executed supplemental agreement for the suspension of benefits.

10. Section 413(d) of the Act, 77 P.S. § 774.3 provides,

> Notwithstanding any provision of this act, an insurer may modify the compensation payments made during the time the employe has returned to work at earnings less than the employe earned at the time of the work-related injury, upon written notification of modification by the insurer to the employe and the department, on a form prescribed by the department for this purpose. The notification of modification shall include an affidavit by the insurer that compensation has been modified because the employe has returned to work at lesser earnings. The insurer must mail the notification of modification to the employe and the department within seven days of the insurer's modifying compensation.
> (1) If the employe contests the averments of the insurer's affidavit, a special supersedeas hearing before a workers' compensation judge may be requested by the employe indicating by a checkoff on the notification form that the modification of benefits is being challenged and filing the notification of challenge with the department within twenty days of receipt of the notification of modification from the insurer. The special supersedeas hearing shall be held within twenty-one days of the employe's filing of the notification of challenge.
> (2) If the employe does not challenge the insurer's notification of modification within twenty days under paragraph (1), the employe shall be deemed to have admitted to the return to work and receipt of wages at lesser earnings as alleged by the insurer. The insurer's notification of modification shall be deemed to have the same binding effect as a fully executed supplemental agreement for the modification of benefits.

formal answer or petition. The claimant simply checks the relevant box on the required form of notice, Form LIBC–751. This procedure was followed here.

■ With respect to the timeliness of the WCJ's decision, the Board relied upon 34 Pa.Code § 131.49(d) and held that the WCJ's failure to decide Claimant's supersedeas request resulted in a "deemed" denial. Claimant argues that this regulation has no application to this case, because it was Claimant, not Employer, who requested a supersedeas. We agree that the regulation at 34 Pa.Code § 131.49(d) does not apply to this case. However, it does not follow that Claimant is thereby entitled to reinstatement of total indemnity benefits from January 29, 2002, through April 25, 2003, when the WCJ issued his decision.

■ Petitions filed by employers alleging full recovery under Section 413(a.1) of the Act, 77 P.S. § 774(1), generate an automatic supersedeas request on behalf of the employer. The regulation at 34 Pa. Code § 131.49 addresses this type of supersedeas and provides that a WCJ must hold a hearing within 21 days of the assignment and issue a written order within 7 days of the hearing. If the WCJ fails to meet these deadlines, the supersedeas is

deemed denied, and the claimant continues to receive indemnity benefits.[11]

Here, we have a special supersedeas request made by Claimant in connection with his challenge to Employer's suspension or modification of his benefits under Sections 413(c) and (d) of the Act, 77 P.S. §§ 774.2, 774.3. Accordingly, the regulation at 34 Pa.Code § 131.50a applies. It provides, in relevant part, that if the WCJ

fails to hold a hearing within 21 days or fails to issue a written order approving the suspension or modification of benefits within 14 days of the hearing, the insurer shall reinstate the employee's workers' compensation benefits at the weekly rate the employee received prior to the insurer's suspension or modification of benefits

34 Pa.Code 131.50a(d). Claimant asserts that Employer was required to reinstate his benefits once it became clear that the WCJ failed to meet the timelines in 34 Pa.Code § 131.50a(d).

■ In this case, Employer continued to pay Claimant partial indemnity benefits after his return to work. The amount of his benefit varied from week to week, and at times was reduced to a payment of $0, in accordance with the requirements of Section 306 of the Act.[12] These adjust-

---

11. 34 Pa.Code § 131.49(a) and (d) provide in relevant part:

(a) The filing of a petition alleging full recovery, accompanied by a physician's affidavit to that effect, which was prepared in connection with an examination of the employee no more than 21 days from the filing of the petition, shall act as an automatic request for supersedeas.

* * *

(d) If the judge to whom the special supersedeas request has been assigned fails to hold a hearing within 21 days of assignment of the request to the judge or fails to issue a written order within 7 days of the hearing of the supersedeas request, the automatic request for supersedeas will be

deemed denied. The automatic request for supersedeas will remain denied until the judge issues a written order granting the supersedeas, in whole or in part.

12. By happenstance, Claimant's actual wages for the week encompassing January 29, 2002, were $1,174.33. These wages were greater than Claimant's pre-injury average weekly wage of $1,133.30 and the average weekly wages of his co-workers. R.R. 57a. Thus the net effect of Claimant's argument would be that he is nonetheless entitled to full indemnity benefits of $588 under 34 Pa.Code 131.50a (d) for a work week in which he actually received earnings greater than his time of injury earnings. Section 306(a.1) of the Act further proscribes such a benefit in that

ments to Claimant's partial disability payment were made lest his wages and compensation, in combination, exceed "the current wages of a fellow employee in employment similar to that in which [Claimant] was engaged at the time of the injury [in violation of the Act]." Section 306(b)(1) of the Act, 77 P.S. § 512(*l*). Further, Claimant's argument that the WCJ's failure to follow the timelines in 34 Pa.Code § 131.50a requires the payment of *total* disability benefits is also contrary to statutory mandate. Section 306(a) provides that

> *[n]othing in this act shall require payment of total disability compensation benefits* under this clause for any period during which the employe is employed or receiving wages.

77 P.S. § 511(2) (emphasis added).

In sum, the Board erred in its reliance upon 34 Pa.Code § 131.49(d). Nevertheless, the Board correctly determined that Claimant was entitled to continuing partial indemnity benefits and that they were subject to adjustment under Section 306 of the Act.[13] What is determinative under Section 306 is the current rate of compensation for a claimant's time-of-injury job. Absent Employer's adjustments, Claimant would be paid more than he would be paid if he had never been injured, in violation of Section 306. Claimant's argument that he was entitled to total disability, notwithstanding his return to work, would have the regulation at 34 Pa.Code § 131.50a, adopted under Section 413 of the Act,

trump the statutory mandate in Section 306 of the Act. This cannot be done; Section 306 of the Act expressly states that it trumps any other provision in the Act with respect to the payment of total disability to an employee who has returned to work.

■ Claimant next argues that the Board erred by not setting aside Employer's November 20, 2001 Notification because its Form LIBC–751 stated that Claimant returned to work at earnings equal to or greater than his time of injury earnings. As noted by Claimant, even Employer's witness admitted that Claimant did not return to employment at his pre-injury earnings, except for the week of January 28, 2002.

■ Fraud is a calculated deception, by single act or by several, by suppression of truth, or by suggestion of what is false, whether directly or by *innuendo*, by speech or silence, by word of mouth, look or gesture. *Moser v. DeSetta*, 527 Pa. 157, 589 A.2d 679 (1991); *Frowen v. Blank*, 493 Pa. 137, 143, 425 A.2d 412, 415 (1981). Our Supreme Court has held that "[f]raud is composed of a misrepresentation fraudulently uttered with the intent to induce the action undertaken in reliance upon it, to the damage of its victim." *Thomas v. Seaman*, 451 Pa. 347, 350, 304 A.2d 134, 137 (1973).[14] The party alleging fraud has the burden of proving the same by clear and convincing evidence. *Estate of Bosico*, 488 Pa. 274, 278, 412 A.2d 505, 506 (1980).

---

"[n]othing in the act shall require payment of compensation ... for any period during which the employe is employed and receiving wages equal to or greater than the employe's prior earnings." Added by the Act of June 24, 1996, P.L. 350, 77 P.S. § 511.1.

**13.** This Court may affirm the order of the tribunal below if the result reached is correct without regard to the grounds relied upon by that court. *State Workers' Insurance Fund v.*

*Workers' Compensation Appeal Board (Shaughnessy)*, 837 A.2d 697 (Pa.Cmwlth. 2003).

**14.** The concealment of a material fact can amount to a culpable misrepresentation no less than does an intentional false statement. *Commonwealth v. Monumental Properties, Inc.*, 459 Pa. 450, 484, 329 A.2d 812, 829 (1974).

The elements of that evidentiary burden are: (1) a misrepresentation, (2) knowledge of the misrepresentation, (3) intention by the misrepresenter that the recipient will be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation, and (5) damage to the recipient. *Banks v. Jerome Taylor Associates,* 700 A.2d 1329 (Pa.Super.1997). *Accord Cooney v. Workers' Compensation Appeal Board (St. Joseph's Center),* 776 A.2d 1046 (Pa.Cmwlth.2001); *Cahill v. Workmen's Compensation Appeal Board (North American Coal Corp.),* 137 Pa.Cmwlth.442, 586 A.2d 522 (1991).

Claimant cannot satisfy this heavy burden. Assuming, *arguendo,* that the statement on the required Form LIBC–751 that Claimant returned to work with greater or equal to Claimant's pre-injury earnings was a misrepresentation, Claimant cannot show fraud. Employer did not intend or attempt to deceive Claimant. Further, Employer did not induce Claimant to act in reliance on the information on the Form LIBC–751 to his detriment. The record shows that Employer explained the adjustments to Claimant's disability in its weekly letter sent to him. Indeed, Claimant filed a prompt challenge to Employer's suspension or modification. In advance of implementing its procedure, Employer met with union representatives and made its staff available for meetings with affected employees, as needed or requested. This record cannot support Claimant's charge of fraud, and the Board did not err by refusing to set aside the November 27, 2001 Notification.

■ Claimant's final argument is that the Board erred in concluding that Employer properly calculated his partial disability benefits when it did so without giving due consideration to Claimant's overtime history. Claimant contends that his significant overtime was not given due consideration by the WCJ and the Board.

To advance this contention, Claimant directs the court to our holding in *Maier's Bakery v. Workers' Compensation Appeal Board (Sandt),* 751 A.2d 1208 (Pa.Cmwlth. 2000). In that case, this Court reviewed the impact of overtime in determining the appropriate rate of compensation under Section 306(b)(1) of the Act. We concluded that overtime must be used to calculate a claimant's average weekly wage; in addition, we held that hours of employment can constitute a significant factor in determining similarity of employment for purposes of Section 306(b)(1) of the Act. In *Maier's Bakery,* the claimant historically worked on average approximately 20 hours more a week than his fellow employees; this singular working history distinguished his employment from that of his co-workers.

In the instant case, Claimant testified that he worked as much overtime as possible and that his co-workers did not work as much overtime. Accepting or rejecting the testimony of any witness, in whole or in part, is within the WCJ's role as fact finder, and the WCJ, not this Court, determines the weight to give the evidence. *Young v. Workers' Compensation Appeal Board (Am–Gard),* 816 A.2d 1236 (Pa. Cmwlth.2003). The WCJ found that Claimant's conclusory testimony that he worked more overtime than his co-workers was inadequate to show that his overtime distinguished him from others. Although the Claimant would have us find otherwise, this Court is precluded from reweighing the evidence. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan),* 531 Pa. 287, 612 A.2d 434 (1992).

For these reasons, we affirm the decision of the Board.

## ORDER

AND NOW, this 22nd day of July, 2004, the decision of the Workers' Compensation Appeal Board dated February 13, 2004, is hereby affirmed.