**Celeste KRAEUTER, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (AJAX ENTERPRISES, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 2, 2013.

Decided Dec. 19, 2013.

Robert Cullen, Bristol, for petitioner.

Joel C. Roinestad, Philadelphia, for respondent Ajax Enterprises, Inc.

BEFORE: LEADBETTER, Judge, and BROBSON, Judge, and COLINS, Senior Judge.

OPINION BY Judge LEADBETTER.

Celeste Kraeuter (Claimant) petitions for review of the order of the Workers' Compensation Appeal Board (Board) that reversed the decision of the Workers' Compensation Judge (WCJ) granting Claimant's (1) petition to set aside the final receipt filed by Ajax Enterprises, Inc. (Employer), (2) challenge to the notification of suspension issued by Employer's insurer, the State Workers' Insurance Fund (SWIF), and (3) penalty petition. The WCJ also assessed attorney's fees against Employer for unreasonable contests to Claimant's petitions and challenge and awarded litigation costs. After careful consideration, we reverse the Board's order to the extent that it reversed the WCJ's grant of the petition to set aside the final receipt, the challenge to the suspension notification and the penalty petition and award of litigation costs. We affirm the Board's order reversing the WCJ's award of unreasonable contest attorney's fees.

Claimant sustained a work-related strain to her right shoulder on September 24, 2004 and continued to work until January 12, 2005. She thereafter received disability benefits beginning January 13, 2005 at the weekly compensation rate of $188.86 based on her average weekly wage of $209.85, pursuant to a notice of compensation payable (NCP) issued by Employer on February 11, 2005. On May 15, 2006, SWIF sent Claimant a Notification of Suspension (Form LIBC–751) pursuant to Section 413(c) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* added by Section 2 of the Act of July 1, 1978, P.L. 692, 77 P.S. § 774.2, notifying her that her disability benefits had been suspended effective May 12, 2006 due to her return to work on that day. She was advised that she must file a challenge to the notification within 20 days. On May 18, 2006, Claimant signed an Agreement to Stop Weekly Workers' Compensation Payments (Final Receipt) (Form LIBC–340), which stated that she was able to return to work without a loss of earnings on May 12 and that she had received total compensation of $1358.33 "covering a period of 69 weeks 2 days from the date [her] disability began on 1/13/2006 [sic]." Employer filed the final receipt with the Bureau of Workers' Compensation (Bureau) on June 5, 2006.

On July 26, 2011, Claimant filed a petition to set aside the final receipt, alleging that Employer and/or its insurer obtained the final receipt through fraud and/or improper action. She also filed a penalty petition, alleging that Employer fraudulently filed the final receipt and the suspension notification based on her return to work when she in fact did not return to work on May 12, 2006 and remained disabled. On August 1, 2011, she filed a challenge to the suspension notification. The WCJ consolidated these petitions and challenge and held a hearing on August 17, 2011.

Claimant testified that Employer stopped benefit payments in May 2006, that she had never seen the suspension notification until her counsel received the records from the Bureau in July 2011, and that she noticed the misspelling of her name and address in the NCP, the suspension notification and the final receipt: her last name was spelled as "Krauter," instead of Kraeuter, and her address was spelled as "Idle Wide" Road, instead of "Idlewild" Road. Acknowledging that the signature on the final receipt was hers, she

testified that she used to pick up benefit checks at Employer's office, and that she was pretty sure that Employer asked her to come in and sign it. She further testified that her doctor performed surgery on her arm and did not release her to return to work when she signed the final receipt; that she did not return to work for Employer or any other employer on May 12, 2006 or anytime thereafter; that she had not recovered from the work injury as of May 12, 2006 and was told by her family doctor to avoid physical labor and get an office job. She stated: "I can't use my arm like I use[d] to. I can't even hang up my clothes on the clothes line for a certain amount of time. My arm gets so tired and it hurts." Notes of Testimony (N.T.) at 24; Reproduced Record (R.R.) at 32a.

Employer presented the deposition testimony of Patrick Gallagher, SWIF's claims adjuster since November 2004, who handled Claimant's claim for her September 24, 2004 injury. He testified that he sent Claimant the NCP, indemnity checks and Bureau's documents at her misspelled address listed in the NCP. Claimant previously returned the documents to him after correcting her misspelled name and address, but he did not realize the misspelling until the filing of the instant petitions in July 2011. He testified that he prepared and sent Claimant the suspension notification and the final receipt in May 2006 based on his understanding from "the paperwork" that Claimant had returned to work. Gallagher's Deposition at 14; R.R. at 19a. He closed out Claimant's claim after she returned the signed final receipt.

On cross-examination, Gallagher further testified as to the filing of the suspension notification and the final receipt:

Q. Okay. The form that gave you the understanding that Claimant had returned to work, would that be the February 2nd, 2005 Employer's Wage State-ment form where there's a box checked[,] return to a later or restricted work at the same or greater wage than the pre-injury wage?

. . . .

A. Yes.

. . . .

Q . . . . The Notice of Suspension that you circulated was dated May 15th, 2006[,] correct?

A. Correct.

Q. One year and three months later[,] correct?

A. Correct.

Q. The form that you received back from the Employer, did it indicate anywhere on that form that she had fully recovered from her work injury?

. . . .

A. No.

Q. Okay. You had no medical evidence from an IME doctor that she was fully recovered as of February 2nd, 2005[,] correct?

A. Correct.

Q. You had no evidence from a treating doctor that she had fully recovered from her work injury as of February 2nd, 2005[,] correct?

A. To my knowledge, correct.

*Id.* at 17–18; R.R. at 20a.

The WCJ accepted Claimant's testimony as credible and found that she was not released to return to work and did not return to work on May 12, 2006, that Gallagher failed to investigate her medical status and simply relied on Employer's February 2005 Wage Statement in issuing the suspension notification in May 2006, "ignor[ing] Claimant's subsequent Employee Verification Form and medical reports that contradicted the information in the Employer's Wage Statement." WCJ's Finding of Fact No. 15(f). The WCJ

found that Claimant had not fully recovered from the work injury when she signed the final receipt and continued to suffer a complete loss of earning power, and that Gallagher knew and should have known that the suspension notification and the final receipt were materially incorrect. The WCJ further found that Gallagher engaged in fraudulent conduct by filing the suspension notification and the final receipt without evidence of Claimant's return to work with no loss of earnings or her full recovery from the work injury, and that Employer violated the Act by unreasonably and excessively delaying compensation payment and did not have a reasonable basis to contest Claimant's petitions and challenge.

The WCJ accordingly set aside the suspension notification and the final receipt and ordered Employer to pay Claimant compensation beginning May 12, 2006 with 10% statutory interest. The WCJ assessed a 50% penalty on the unpaid compensation and interest thereon and awarded Claimant litigation costs of $212.45 and quantum meruit unreasonable contest attorney's fees in the amount of 20% of the unpaid compensation from May 12, 2006 to the date of the circulation of the WCJ's decision, interest thereon and assessed penalty.

Employer appealed the WCJ's decision, arguing that the WCJ's findings of fact and conclusions of law were not supported by substantial evidence and that the WCJ mischaracterized and misconstrued the testimony of Claimant and Gallagher. It further argued that the WCJ erred in granting the challenge to the suspension notification filed more than four years after its mailing and in awarding unreasonable contest attorney's fees.

The Board reversed the WCJ's decision. The Board concluded that the facts stated in the suspension notification were deemed to be admitted pursuant to Section 413(c) of the Act due to Claimant's failure to challenge the notification within twenty days, and that her challenge to the suspension notification and the petition to· set aside the final receipt were time-barred by the second paragraph of Sections 413(a) of the Act, 77 P.S. § 772, and Section 434 of the Act, added by Section 6 of the Act of June 26, 1919, P.L. 642, 77 P.S. § 1001, due to her failure to file them within three years from the last compensation payment. The Board further concluded that Claimant failed to establish that Gallagher's action rose to the level of fraud, which would justify a grant of the petition to set aside the final receipt beyond the three-year statute of limitations in Section 434. The Board also noted that Claimant failed to present medical evidence to establish that her work-related disability had not terminated when she· signed the final receipt. The Board disagreed with the WCJ that Employer's action constituted a violation of the Act. Claimant's appeal to this Court followed.

Claimant argues that the Board improperly considered *sue sponte* the timeliness of the challenge to the suspension notification and the petition to set aside the final receipt when Employer waived the issue due to failure to raise it in the appeal to the Board. Claimant further argues that the WCJ's decision is supported by the evidence in the record.[1]

1. This Court's review in this appeal is limited to determining whether the WCJ's findings of fact are supported by substantial evidence or whether an error of law was committed. *Anderson v. Workers' Comp. Appeal Bd. (Penn Ctr. for Rehab)*, 15 A.3d 944, 947 n. 1 (Pa. Cmwlth.2010). In a workers' compensation case, the credibility determinations and evidentiary weight are the province of the WCJ. *Clear Channel Broad. v. Workers' Comp. Appeal Bd. (Perry)*, 938 A.2d 1150, 1156 (Pa. Cmwlth.2007). The Court must review the

When SWIF filed the final receipt in May 2006, 34 Pa.Code § 121.17(a) provided:

> If an injured employe has recovered from his injury so that he has regained his full earning power, and so that all disability due to the injury has terminated, a final receipt may be fully prepared for signature. The fact that the employe returns to similar work at his original or greater wage unaccompanied by a showing that all disability has terminated is not a basis for a final receipt. However, it may be the basis for a suspension of compensation.[2]

A final receipt, "given by an employe or dependent entitled to compensation under a compensation agreement notice or award, shall be prima facie evidence of the termination of the employer's liability to pay compensation under such agreement notice or award." Section 434 of the Act. Section 434 and 34 Pa.Code § 121.17(a) "create an affirmative duty on the insurance company to know that the requirements for a final receipt have been met before the receipt may be lawfully prepared and presented to a claimant." *Cooney v. Workers' Comp. Appeal Bd. (St. Joseph's Ctr.)*, 776 A.2d 1046, 1050 (Pa. Cmwlth.2001). The WCJ "may, at any time within three years from the date to which payments have been made, set aside a final receipt ... if it be shown that all disability due to the injury in fact had not terminated." Section 434. To set aside a final receipt, the claimant must establish that he or she had not fully recovered from the work injury when the final receipt was signed. *Canavan v. Workers' Comp. Ap-*

peal Bd. (B & D Mining Co.), 769 A.2d 1250, 1252 (Pa.Cmwlth.2001).

The three-year statute of limitations in Section 434 of the Act, however, "is not a bar to obtaining benefits if the claimant proves that the final receipt was obtained by fraud, intentional or unintentional deception or other improper action of the employer." *Cooney*, 776 A.2d at 1050. The insurer's presentation of a final receipt "to a claimant known to receive ongoing medical treatment" is "the equivalent of fraud sufficient to set aside a final receipt beyond the three year period of Section 434." *Johnson v. Workers' Comp. Appeal Bd. (Abington Mem'l Hosp.)*, 816 A.2d 1262, 1266 (Pa.Cmwlth.2003). In addition, the insurer's action constitutes fraudulent conduct where an insurer prepares a final receipt, "knowing that the claimant is still disabled," and the claimant signs it "without knowing the significance of the final receipt." *Crawford v. Workmen's Comp. Appeal Bd. (Peugot Contracting)*, 134 Pa.Cmwlth. 89, 577 A.2d 966, 969 (1990).

Gallagher conceded that he prepared and sent Claimant the final receipt for her signature, relying solely on the information provided by Employer in February 2005 and without any information that she had returned to work with no loss of earnings on May 12, 2006 or fully recovered from the work injury as of that date. Gallagher admittedly ignored the information previously provided by Claimant and in Dr. Cautilli's May 2, 2006 report, which stated that Dr. Cautilli repaired the rotator cuff on Claimant's right shoulder and

---

evidence in a light most favorable to the party who prevailed before the WCJ. *Shop Vac Corp. v. Workers' Comp. Appeal Bd. (Thomas)*, 929 A.2d 1236, 1242 n. 4 (Pa.Cmwlth.2007).

**2.** Section 121.17(a) was amended on August 3, 2007, effective August 4, 2007, to provide:

"If an injured employee has recovered from an injury, ... an Agreement to Stop Weekly Workers' Compensation Payments (Final Receipt), Form LD3C–340, may be executed by the parties. The executed agreement shall be filed with the Bureau."

would continue to treat her. Gallagher's own testimony and Claimant's testimony accepted by the WCJ as credible established that Gallagher failed to perform his duty to ascertain Claimant's medical status before preparing and sending the final receipt to Claimant, that Claimant was receiving medical treatment and had not fully recovered from the work injury when she signed the final receipt, and that she did not return to work on May 12, 2006 or anytime thereafter, contrary to the statements in the suspension notification and the final receipt. The record supports the WCJ's finding that Gallagher knew or should have known that the final receipt was materially incorrect.

In *Cooney,* this Court considered the claimant's entitlement to set aside the final receipt beyond the three-year statute of limitations period in Section 434 of the Act under similar facts. In that case, the evidence showed that the claimant was still receiving medical treatment for the work injury when SWIF prepared and presented the final receipt to the claimant and that SWIF had no basis for asserting that she had fully recovered from the work injury. The claimant signed the final receipt to avoid litigation after SWIF assured her that it would continue to pay her medical expenses. In reversing the Board's order and upholding the WCJ's grant of the petition to set aside the final receipt, this Court concluded that "SWIF's preparation and presentation of the final receipt to [the claimant] without a proper basis constitutes fraud that warrants setting aside the final receipt." *Cooney,* 776 A.2d at 1050.

As in *Cooney,* Gallagher's conduct of preparing the final receipt, sending it to Claimant and filing it with the Bureau without any information regarding Claimant's full recovery from the work injury as of May 2006 constituted fraud, as well as an intentional or unintentional deception and improper action, supporting the WCJ's decision to set aside the final receipt after the three-year statute of limitations period. Contrary to the Board's assertion, Claimant was not required to present medical evidence to set aside the final receipt. Unequivocal medical evidence is required to set aside a final receipt only "[w]hen it is not obvious that the claimant ha[s] not fully recovered and the claimant has returned to work with no loss of earning power." *Canavan,* 769 A.2d at 1252. Here, it was obvious that Claimant had not recovered from the work injury in May 2006. Gallagher admitted that she was receiving medical treatment, had not fully recovered from the work injury, and did not return to work when she signed the final receipt.

Gallagher relied on the same information to send Claimant the suspension notification pursuant to Section 413(c) of the Act, which provides:

> Notwithstanding any provision of this act, an insurer may suspend the compensation *during the time the employe has returned to work at his prior or increased earnings upon written notification of suspension* by the insurer to the employe and the department, on a form prescribed by the department for this purpose. The notification of suspension shall include an affidavit by the insurer that compensation has been suspended because the employe has returned to work at prior or increased earnings. The insurer must mail the notification of suspension to the employe and the department within seven days of the insurer suspending compensation. [Emphasis added.]

Section 413(c) of the Act is intended to streamline the suspension procedure by permitting an employer to unilaterally suspend benefits, without a need to file a

formal suspension petition, based on the insurer's affidavit that a claimant has returned to work without a loss of earnings. *Hinkle v. Workers' Comp. Appeal Bd. (Gen.Elec.Co.)*, 808 A.2d 1036, 1039–40 (Pa. Cmwlth.2002). The claimant may challenge the suspension notification and request a special supersedeas "by a checkoff on the notification form" and by filing the notification of challenge "within twenty days" of receipt of the suspension notification from the insurer. Section 413(c)(1).[3] If the employee does not challenge the suspension notification within the twenty-day period, the employee "shall be deemed to have admitted to the return to work and receipt of wages at prior or increased earnings," and the suspension notification "shall be deemed to have the same binding effect as a fully executed supplemental agreement for the suspension of benefits." Section 413(c)(2).

■ Claimant did not challenge the suspension notification within the twenty-day period specified in Section 413(c)(1) of

the Act. The notification, therefore, had the effect of a supplemental agreement to suspend her disability benefits based on her return to work with no loss of earnings. The first paragraph of Section 413(a) of the Act, 77 P.S. § 771, authorizes a WCJ to set aside an original or supplemental agreement "at any time ... if it be proved that such ... agreement was in any material respect incorrect." The party seeking to set aside a supplemental agreement has the burden of proving that it was materially incorrect when it was issued. *City of Pittsburgh v. Workers' Comp. Appeal Bd. (Wilson)*, 11 A.3d 1071, 1075 (Pa.Cmwlth.2011). The WCJ may set aside a supplemental agreement for relevant and significant inaccuracy, "even absent a finding of mistake of law or fact, fraud, or overreaching." *Furmanek v. Workmen's Comp. Appeal Bd.*, 64 Pa. Cmwlth. 367, 439 A.2d 1359, 1361 (1982).[4]

■ The record established that Claimant did not return to work on May 12, 2006 or anytime thereafter. Gallagher con-

---

3. The only relevant questions in the supersedeas hearing on the challenge are whether the claimant (1) has indeed returned to work without a wage loss, (2) returned as of the date of the issuance of the suspension notification and (3) is currently working without a wage loss. *U.S. Airways v. Workers' Comp. Appeal Bd. (Rumbaugh)*, 578 Pa. 456, 471, 854 A.2d 411, 420 (2004).

4. The first paragraph of Section 413(a) of the Act authorizing the WCJ to set aside an NCP or an agreement for material inaccuracy at any time covers "corrective amendments." *Cinram Mfg., Inc. v. Workers' Comp. Appeal Bd. (Hill)*, 601 Pa. 524, 530, 975 A.2d 577, 580 (2009). On the other hand, any "amendments addressing subsequently-arising medical or psychiatric conditions related to the original injury (or consequential conditions)," such as an increase, decrease, recurrence, or cessation of the disability, are covered by the second paragraph of Section 413(a), 77 P.S. § 772, which provides that "except in the case of eye injuries, no notice of compensa-

tion payable, agreement or award shall be reviewed, or modified, or reinstated, unless a petition is filed with the department within three years after the date of the most recent payment of compensation made prior to the filing of such petition." *Id.* at 530–31, 975 A.2d at 580–81. In seeking to set aside the suspension notification, which was deemed to be a supplemental agreement to suspend her benefits under Section 413(c) of the Act due to her failure to timely challenge it, Claimant alleged its inaccuracy regarding her return to work with no loss of earnings. She did not allege that her medical condition had changed. Consequently, the relief sought by her was a corrective amendment under the first paragraph of Section 413(a), which authorizes the WCJ to set aside an agreement at any time. *Compare Fitzgibbons v. Workers' Comp. Appeal Bd. (City of Phila.)*, 999 A.2d 659, 663–64 (Pa.Cmwlth.2010) (holding that a review petition seeking to amend an NCP to include additional work injuries must be filed within three years of the date of the most recent payment of compensation).

ceded that he had no information regarding Claimant's return to work when he issued the suspension notification and that he "knew that her disability continued, based upon Dr. Cautilli's May 2nd, 2006 report." Deposition of Gallagher at 36; R.R. at 24a. Employer does not dispute the WCJ's Finding of Fact No. 18 that "Claimant as of May 12, 2006 ongoing continues to suffer a complete loss of earning power due to the September 24, 2004 work injury." Because the suspension notification was totally incorrect, and SWIF had no basis to suspend Claimant's benefits as of May 12, 2006, the WCJ properly set aside the suspension notification and reinstated Claimant's benefits as of May 12, 2006.[5]

 Section 435(d)(i) of the Act, added by Section 3 of the Act of February 8, 1972, P.L. 25, 77 P.S. § 991(d)(i), authorizes the WCJ to assess penalties against the employer for a violation of the Act, rules or regulations in the amount of up to 10% of the amount awarded and interest accrued and payable. The amount of the penalty may be increased to 50% in cases of unreasonable or excessive delays. *Id.* The assessment of penalties and the determination of the amount of penalties are within the WCJ's discretion, and we will not disturb the WCJ's imposition of penal-

ties absent an abuse of discretion. *Cleveland Bros. v. Workers' Comp. Appeal Bd. (Hazlett)*, 57 A.3d 199, 202 (Pa.Cmwlth. 2012). The record established that Employer sent the suspension notification without any information regarding Claimant's return to work with no loss of earnings and fraudulently filed the final receipt without any evidence of her full recovery from the work injury, in clear violation of the Act and regulations. The evidence supports the WCJ's exercise of his discretion to impose a 50% penalty against Employer for unreasonably and excessively delaying payment of compensation.

 Under Section 440(a) of the Act, added by Section 3 of the Act of February 8, 1972, P.L. 25, 77 P.S. § 996(a), a claimant who has prevailed in whole or in part in a contested case is entitled to an award of reasonable sum of attorney's fees, unless an employer had a reasonable basis for the contest. The reasonableness of the employer's contest depends upon whether the contest was prompted to resolve a genuinely disputed issue or merely to harass the claimant. *Fitchett v. Workers' Comp. Appeal Bd. (Sch. Dist. of Phila.)*, 67 A.3d 80, 95 (Pa.Cmwlth.2013). The employer has the burden of establishing the reasonableness of its contest. *Lemon v.*

**5.** The Board cited *Donahue v. Workers' Compensation Appeal Board (Philadelphia Gas Works)*, 856 A.2d 230 (Pa.Cmwlth.2004), for a proposition that an employer does not commit fraud by filing a suspension notification containing inaccurate information, where it did not intend to deceive or mislead an employee. In *Donahue,* the employer issued a suspension notification when the claimant returned to his pre-injury position. The evidence showed that the claimant returned to work but not at his pre-injury wages. After his return, however, the employer continued to pay the claimant partial disability benefits and explained the adjustments made to his benefits in weekly letters. This Court concluded that the record did not support the

fraud charge against the employer because the employer did not intend or attempt to deceive the claimant. This case is factually distinguishable. Unlike in *Donahue,* Claimant did not return to work and was receiving medical treatment when she received the suspension notification. Gallagher admittedly issued the notification, without any evidence that Claimant had returned to work. Such conduct clearly constitutes not only fraud but also an intentional or unintentional deception and improper action. Moreover, a supplemental agreement may be set aside for a relevant and significant inaccuracy, "even absent a finding of mistake of law or fact, fraud, or overreaching." *Furmanek,* 439 A.2d at 1361.

*Workers' Comp. Appeal Bd. (Mercy Nursing Connections),* 742 A.2d 223, 228 (Pa. Cmwlth.1999). The reasonableness of the employer's contest is a question of law subject to plenary review by this Court. *Id.*

We disagree with the WCJ that Employer's contest was not reasonable. In *Cooney,* the Court concluded that the employer had a reasonable basis to contest the petition to set aside the final receipt in light of the fact that the petition was filed beyond the three-year statute of limitations period in Section 434 of the Act. As in *Cooney,* Claimant did not seek to set aside the suspension notification and the final receipt within the time limitations in Sections 413(c) and 434 of the Act. Nothing in the record suggests that Employer decided to contest the relief sought by Claimant merely to harass her.

Accordingly, we reverse the Board's order reversing the WCJ's grant of the petition to set aside the final receipt, the challenge to the suspension notification and the penalty petition, reversing the WCJ's reinstatement of Claimant's disability benefits with 10% interest, and reversing the WCJ's award litigation costs. The Board's order reversing the WCJ's award of unreasonable contest attorney's fees is affirmed.

### *ORDER*

AND NOW, this 19th day of December, 2013, the order of the Workers' Compensation Appeal Board (Board) in the above-captioned matter is REVERSED to the extent that it reversed the decision of the Workers' Compensation Judge (WCJ) granting the petition of Celeste Kraeuter (Claimant) to set aside the final receipt and her challenge to the suspension notification and her penalty petition, reinstating her disability benefits with 10% interest and awarding litigation costs. The Board's order reversing the WCJ's award

of unreasonable contest attorney's fees to Claimant is AFFIRMED.