IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police,         :
                    Petitioner      :
                                  :
    v.                     :  No. 951 C.D. 2021
                                  :
Michael Tilton (Workers'      :
Compensation Appeal Board),  :
                  Respondent   :  Submitted: February 18, 2022

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE STACY WALLACE, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
JUDGE CEISLER                            FILED: July 21, 2022

The Pennsylvania State Police (Employer) petitions for review of the July 28, 2021 Order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a workers' compensation judge (WCJ) granting the petitions of Michael Tilton (Claimant), who sought the reinstatement of his workers' compensation (WC) benefits, an amendment to the description of his work injury, and the imposition of penalties for Employer's violation of the Workers' Compensation Act (Act).[1] Employer argues that: the WCJ's decision reinstating Claimant's WC benefits was unsupported by substantial evidence; the WCJ erred in overruling Employer's hearsay objection to the admission of certain evidence; and

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

the WCJ erred in imposing penalties pursuant to Section 435(d)(i) of the Act.[2]  After careful review, we affirm the Board.

## I. Background

Claimant sustained a work injury on July 30, 2018, while enrolled as a cadet in the Pennsylvania State Police Academy (Academy).  Certified Record (C.R.), Item No. 28.  Employer accepted liability for the work injury through issuance of a Notice of Compensation Payable (NCP), which described the work injury as a strain or tear of the lower back, and began paying total disability benefits, effective July 31, 2018.  C.R., Item No. 23. On November 30, 2018, the parties executed a Supplemental Agreement (First Supplemental Agreement), which suspended Claimant's wage loss benefits based on his alleged return to work, effective November 19, 2018.  C.R., Item No. 24. Employer remained liable for Claimant's medical costs.  *Id.*

On April 9, 2019, Claimant filed a Petition to Reinstate Compensation Benefits (Reinstatement Petition), seeking the payment of wage loss benefits retroactive to the date of his work injury; a Petition to Review Compensation Benefits (Review Petition), requesting an amendment to the description of his work injury to include lumbar disc herniations with radiculopathy and aggravation of a preexisting back condition that required surgical intervention; and a Petition for Penalties (First Penalty Petition), seeking the maximum penalty permitted under Section 435(d)(i) of the Act based on an allegation that Employer fraudulently

---

[2] The Act provides for the imposition of penalties against an employer or insurer for violations of the Act, or the rules and regulations of the Pennsylvania Department of Labor and Industry (Department), in a sum not exceeding 10% of the total amount awarded and interest accrued and payable.  Section 435 of the Workers' Compensation Act, *as amended*, added by the Act of February 8, 1972, P.L. 25, 77 P.S. § 991(d)(i).  A penalty may be increased to 50% in cases of unreasonable or excessive delay.  *Id.*

induced Claimant into signing the First Supplemental Agreement (collectively, Petitions).[3]

Several months later, on November 7, 2019, the parties executed another Supplemental Agreement (Second Supplemental Agreement), in which Employer agreed to reinstate Claimant's wage loss benefits, effective November 24, 2018, and to pay statutory interest on all past-due benefits. C.R., Item No. 28. After Employer failed to make the agreed-upon interest payments, Claimant filed a new Penalty Petition (Second Penalty Petition) on January 9, 2020, seeking the maximum penalty under Section 435(d)(i) of the Act.[4] C.R., Item No. 9.

In support of his Petitions,[5] Claimant testified before the WCJ on May 2, 2019, and March 12, 2020, and presented the deposition testimony of his treating physician, Dr. Kristen Radcliff.[6] Employer presented the deposition testimony of John Handal, M.D., an orthopedic surgeon who performed an independent medical examination (IME) of Claimant on July 1, 2019.

---

[3] Claimant also requested payment of counsel fees under Section 440 of the Act, added by the Act of February 8, 1972, P.L. 25, 77 P.S. § 996. The WCJ denied the request, finding that Employer's contest was reasonable in light of Claimant's prior medical history. C.R., Item No. 12, Finding of Fact (F.F.) No. 19.

[4] Employer attributed the error to its insurance carrier having reassigned the case to a new claims adjustor. C.R., Item No. 20, N.T., 3/12/20, at 7.

[5] Unless indicated otherwise, any reference herein to "Petitions" shall be deemed to include the Second Penalty Petition.

[6] In addition, Claimant presented the affidavit of Stacy Sloan, director of operations for Claimant's counsel, who confirmed that no interest payments had been made under the Second Supplemental Agreement, as of March 9, 2020. C.R., Item No. 29.

3

## A. Claimant's Evidence

Claimant testified that, before working for Employer, he suffered an injury to his lower back in September 2017, which was surgically repaired in October 2017. C.R., Item No. 17, Notes of Testimony (N.T.), 5/2/19, at 16. By March 2018, Claimant had recovered well enough from this injury to pass the qualifying physical exam required for enrollment at the Academy. *Id.* at 17.

Claimant sustained his work injury during an exercise on his first day of cadet training. *Id.* at 13. He described the injury as less painful and debilitating than the injury he suffered in 2017. *Id.* at 19. Claimant sought treatment with Dr. Radcliff, who had performed his prior back surgery. *Id.* at 20. In lieu of surgery, Claimant elected to undergo a course of physical therapy. *Id.* Claimant estimated that, by November 2018, he was 95% recovered and "ready to return" to cadet training. *Id.* at 25.

In December 2018, a claims adjustor for Employer's insurance carrier notified Claimant that Dr. Radcliff had released Claimant to return to full duty, effective November 19, 2018. *Id.* at 22. Employer prepared the First Supplemental Agreement,[7] indicating that Claimant's wage loss benefits were suspended as of November 19, 2018, because Claimant had "returned to work, no loss of wages." *Id.* at 22-23, C.R., Item No. 24. The claims adjustor advised Claimant that he would only experience a brief period of wage loss, because cadet training would commence in February 2019. N.T., 5/2/19, at 25. Claimant, without the advice of counsel,

---

[7] The First Supplemental Agreement utilized a Department form, LIBC-337, by which the parties can check a box indicating the reason a claimant's disability status has changed. Employer selected the first box, which provides benefits are "[s]uspended, returned to work, no loss of wages." C.R., Item No. 24.

signed and returned the First Supplemental Agreement on December 4, 2018. C.R., Item No. 24.

In February 2019, Claimant's lower back condition worsened, with the onset of "a shooting pain" that radiated from his lower back and down his right leg to his calf when Claimant arose from bed one morning. N.T., 5/2/19, at 25-26. Claimant described the pain as similar to, but more intense than, the pain he experienced from the July 30, 2018 work injury. *Id.* at 27. He underwent a second surgery on April 16, 2019, which was followed by a lumbar fusion in November 2019. C.R., Item No. 20, N.T., 3/12/20, at 23, 27. In the months following the November 2019 lumbar fusion, Claimant continued to experience pain radiating from his back into both legs and right foot. *Id.* at 25. As of March 2020, Claimant's pain had improved with physical therapy, but Dr. Radcliff had not released him to return to work. *Id.* at 25-26.

Dr. Radcliff testified by deposition on July 17, 2019, that he treated Claimant a few days after he sustained the July 30, 2018 work injury. C.R., Item No. 26, Radcliff Dep., 7/17/19, at 14. An August 8, 2018 magnetic resonance imaging (MRI) study revealed recurrent disc herniation at L4-L5. *Id.* at 15. Dr. Radcliff prescribed a course of conservative care, including pain relievers and physical therapy. *Id.* at 16-17. After two months, Dr. Radcliff added a work-hardening regimen to Claimant's treatment. *Id.* at 18. By November 2018, Claimant had improved enough that Dr. Radcliff cleared him to resume full-duty work, without restrictions. *Id.*

Dr. Radcliff stated that Claimant resumed treatment on February 21, 2019, for renewed right leg and right foot pain. *Id.* at 20-21. Dr. Radcliff ordered another MRI, which indicated the presence of right lower extremity recurrent radiculopathy

at L3-L4, secondary to recurrent disc herniations at L3-L4 and at L4-L5. *Id.* at 25. Dr. Radcliff opined that these conditions preexisted, and were aggravated by, the July 30, 2018 work injury. *Id.* at 26. On cross-examination, Dr. Radcliff acknowledged that Claimant's recurrent disc herniations occurred in February 2019, but he maintained that those diagnoses were "related to the work injury." *Id.* at 51. Dr. Radcliff also opined that, as of June 6, 2019, Claimant was "capable of sedentary work, office work, computer work, things of that nature," but he could not return to the Academy for cadet training. *Id.* at 36-37.

At a subsequent deposition conducted to rebut the testimony of Dr. Handal, Employer's medical expert, Dr. Radcliff reviewed a surgical pathology report that Dr. Radcliff requested for the purpose of determining whether the tissue removed during Claimant's second surgery consisted of herniation material, which would indicate the presence of a recurrent hernia, or scar tissue from the previous operation. C.R., Item No. 27, Radcliff Dep., 2/19/20, at 40, 43. The pathology report confirmed Dr. Radcliff's belief that the tissue removed from Claimant's spine consisted of herniation material, which supported his opinion that Claimant suffered from recurrent disc herniations. *Id.* at 43-45. Employer's counsel objected to the pathology report as inadmissible hearsay, and argued that Dr. Radcliff's testimony regarding the pathology report went beyond the scope of rebuttal testimony. *Id.* at 39.

### B. Employer's Evidence

Employer's medical expert, Dr. Handal, conducted an IME of Claimant on July 1, 2019. During that examination, Dr. Handal testified that Claimant rated the pain in his back and right leg between 4 and 7 on a 10-point scale. C.R., Item No. 33, Handal Dep., 1/27/20, at 18, 27. Dr. Handal observed weakness in Claimant's

6

right hamstrings and tibialis anterior, and some right calf atrophy. *Id.* at 27-28. Claimant was able to walk on his toes, but he was unable to "heel walk." *Id.* at 28. Dr. Handal attributed this to scar tissue surrounding Claimant's right L5 nerve, which is responsible for controlling the right leg. *Id.* at 41-42. In addition, Dr. Handal found that Claimant's reflexes on the right side of his spine at the S1 level were "absent," further preventing normal movement of the right foot. *Id.* at 30. Dr. Handal disagreed with Dr. Radcliff's diagnosis that Claimant suffered from recurrent disc herniations, and he opined that Claimant's work injury consisted only of a lumbar sprain. *Id.* at 54.

Dr. Handal also conducted a review of Claimant's medical records. *Id.* at 66. He found no evidence of recurrent disc herniations in Claimant's MRIs and attributed Claimant's symptoms to scar tissue from his surgeries, which left parts of the L4-L5 slightly misshapen. *Id.* at 42-43. Dr. Handal explained that some images in the MRI report were enhanced by the addition of gadolinium, a dye that distinguishes recent structural changes from preexisting structure, and therefore can help distinguish scar tissue from possible disc herniation. *Id.* at 39. In his view, the gadolinium-enhanced images confirmed his finding that the abnormalities in Claimant's lumbar region were the result of scar tissue from his prior surgeries and not from a recurrent herniation. *Id.* at 55-56. In response to Dr. Radcliff's rebuttal testimony, Dr. Handal authored a surrebuttal report, in which he reiterated his opinion, within a reasonable degree of medical certainty, that Claimant's diagnostic studies did not document recurrent disc herniations. C.R., Item No. 35 at 2. As for the pathology report relied on by Dr. Radcliff, Dr. Handal stated that he could not definitively identify which event led to Claimant's April 16, 2019 surgery, or

7

whether Claimant's condition resulted from the original July 30, 2018 work injury. *Id.* at 3.

## C. The WCJ's Decision

On November 10, 2020, the WCJ granted Claimant's Petitions. C.R., Item No. 12, WCJ Decision, Conclusion of Law (C.L.) Nos. 2-4. The WCJ credited Claimant's testimony in its entirety and found that Dr. Radcliff's testimony was more credible and persuasive than Dr. Handal's. *Id.*, F.F. No. 15(a) and (b). In explaining his credibility determinations, the WCJ noted that Dr. Radcliff "had the benefit of personally evaluating Claimant's condition both before and after the July 30, 2018[,] work injury, whereas Dr. Handal evaluated Claimant" only once. *Id.* at 15(b). He also found that Dr. Radcliff's opinions were "logical, internally consistent, and well-supported by his examination findings, diagnostic studies, and intraoperative findings." *Id.* The WCJ found that Dr. Handal's opinions "lacked the same level of support, as his readings of the MRIs were inconsistent with the [MRI reports] and . . . with the fact that Dr. Radcliff removed disc material, not scar tissue, during his April 16, 2019 surgery." *Id.* The WCJ overruled Employer's objection to Dr. Radcliff's testimony regarding the pathology report, as it addressed Dr. Handel's testimony that Dr. Radcliff did not remove herniation material during the April 16, 2019 surgery.[8] F.F. No. 13, n.2.

The WCJ found that, the First Supplemental Agreement notwithstanding, Claimant had not returned to work with Employer, or in any other capacity, as of November 19, 2018. *Id.*, F.F. No. 6(e). Although Employer honored its wage loss

---

[8] While the WCJ overruled Employer's objection to Dr. Radcliff's testimony regarding the pathology report, the WCJ sustained Employer's objections to Dr. Radcliff's rebuttal testimony regarding Claimant's August 2018 and March 2019 MRIs and the April 16, 2019 surgery, as it exceeded the scope of rebuttal. C.R., Item No. 12, F.F. No. 13, n.2.

8

obligations under the Second Supplemental Agreement, it failed to make the agreed-upon interest payments. *Id.*, C.L. No. 2. The WCJ therefore ordered Employer to pay the past-due interest on those benefits and to continue paying Claimant total disability benefits of $512.50 weekly, unless otherwise agreed or adjudicated. WCJ Decision at 15.

Although the WCJ made no findings with regard to the fraud Claimant alleged, he concluded that Claimant met his burden of proving that Employer violated the Act when it suspended benefits pursuant to the First Supplemental Agreement, "despite the fact that Claimant had not returned to work in any capacity." C.L. No. 3. Although Employer rectified the error by executing the Second Supplemental Agreement and reinstating Claimant's wage loss benefits, "it did not do so until after the present litigation began." F.F. No. 15(d). The WCJ also found that Employer violated the Act when it failed to pay the statutory interest on Claimant's past-due wage loss benefits. C.L. No. 3. Accordingly, the WCJ granted Claimant's Penalty Petitions. WCJ Decision at 15.

With regard to Claimant's Review Petition, the WCJ concluded that Claimant met his burden of proving that the July 30, 2018 work injury consisted of "recurrent disc herniations at L3-[L]4 and L4-[L]5, right L5 radiculopathy, and symptomatic drop foot." *Id.*, F.F. No. 15(c), C.L. No. 4. Additionally, the WCJ concluded that the April 16, 2019 and November 19, 2019 surgeries performed by Dr. Radcliff were "causally related to the July 30, 2018[,] work injury." C.L. No. 4.

Employer appealed to the Board, which affirmed. C.R., Item No. 15. This appeal followed.[9]

---

[9] Our scope of review in a WC proceeding is limited to determining whether constitutional rights were violated, whether an error of law was committed, and whether the findings of fact are

**(Footnote continued on next page…)**

## II. Issues

In its appeal to this Court,[10] Employer argues that the WCJ erred in granting the Review Petition, since Claimant's ongoing disability is more clearly attributable to the recurrence of Claimant's back pain in February 2019 than to his July 30, 2018 work injury. Employer also argues that the WCJ erred in admitting the pathology report. Lastly, Employer argues that the WCJ erred in granting Claimant's Penalty Petitions without pointing to any specific violation of the Act or the Department's regulations.

## III. Discussion

## A. The Review Petition

A review petition is the appropriate mechanism to secure modification of the injury description in an NCP. *Cinram Mfg., Inc. v. Workers' Comp. Appeal Bd. (Hill)*, 975 A.2d 577, 580 (Pa. 2009). The NCP is materially incorrect if the accepted injury does not reflect all the injuries sustained in the initial work incident. *City of Harrisburg v. Workers' Comp. Appeal Bd. (Palmer)*, 877 A.2d 555, 559 (Pa. Cmwlth. 2005). The claimant bears the burden of establishing the existence of additional, compensable injuries. *Cinram Mfg.*, 975 A.2d at 582.

On appeal, Employer argues that the testimony of Claimant's witnesses failed to satisfy his burden of proof on a review petition. Employer asserts that Dr. Radcliff cleared Claimant to return to work in November 2018, a period in which Claimant acknowledged his condition was "excellent." Employer's Br. at 26. Employer characterizes the February 2019 incident, in which Claimant suffered a recurrence

---

supported by substantial evidence. *Gumro v. Workmen's Comp. Appeal Bd. (Emerald Mines Corp.)*, 626 A.2d 94, 97 (Pa. 1993).

[10] Employer filed an application for supersedeas with this Court on November 4, 2021, which we denied on January 6, 2022.

of back pain while rising from bed, as a "second, intervening" event that was "identical" to Claimant's November 2017 non-work-related back injury. *Id.* As a result, Employer argues that Claimant's ongoing disability cannot be properly attributed to the July 30, 2018 work injury.

We disagree, as Employer's argument challenges the WCJ's credibility determinations. It is well settled that the WCJ has exclusive authority to act as factfinder, determine the credibility of witnesses, and weigh the evidence, and the WCJ's findings will not be disturbed if they are supported by substantial, competent evidence. *Rogele, Inc. v. Workers' Comp. Appeal Bd. (Hall)*, 198 A.3d 1195, 1204 (Pa. Cmwlth. 2018). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Aqua Am., Inc. v. Workers' Comp. Appeal Bd. (Jeffers)*, 199 A.3d 482, 486 (Pa. Cmwlth. 2018). It does not matter if there is evidence in the record that supports findings contrary to those made by the WCJ; the pertinent inquiry is whether there is any evidence to support the findings actually made. *Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003).

Here, Dr. Radcliff recognized that Claimant had a lower back condition that preexisted the July 30, 2018 work injury. C.R., Item No. 26, Radcliff Dep., 7/17/19, at 33. He credibly opined that the work injury aggravated this preexisting condition, causing the recurrent disc herniations at L3-L4 and L4-L5. Therefore, Claimant's present condition was causally linked to his "work-related injury." *Id.* at 30. The WCJ thoroughly explained his reasons for accepting Dr. Radcliff's opinions over those of Dr. Handal, which took into consideration Dr. Radcliff's treatment of Claimant before and after he sustained the July 30, 2018 work injury, and which were supported by the relevant medical records.

11

As to Claimant's preexisting lower back problems, the WCJ found that Claimant "credibly and clearly explained" how the symptoms from his original July 2018 work injury differed from his November 2017 back injury, and he credibly testified that the pain he experienced in February 2019 was similar to that which he suffered following the work injury, but more intense. Employer's arguments provide no basis for this Court to disturb the WCJ's credibility determinations, and we decline to do so.

### B. Hearsay/Scope of Rebuttal

Next, Employer argues that the WCJ erred in overruling its objections to Dr. Radcliff's discussion of the pathology report during his February 19, 2020 rebuttal testimony, as it went beyond the scope of rebuttal testimony. Employer further argues that the report is inadmissible hearsay, which can only be admitted when used to demonstrate evidence of the facts contained therein, "not as evidence of a medical opinion or diagnosis." Employer's Br. at 29.

We reject both arguments. The appropriate scope of rebuttal evidence is defined by the evidence that it is intended to rebut. *Com. v. Ballard*, 80 A.3d 380, 401 (Pa. 2013); *see also Flowers v. Green*, 218 A.2d 219, 220 (Pa. 1966) (observing that "[r]ebuttal is proper where facts discrediting the proponent's witnesses have been offered"). The WCJ sustained, in part, Employer's objections as to the scope of Dr. Radcliff's rebuttal testimony, but the WCJ overruled its objection to Dr. Radcliff's discussion of the pathology report, as that testimony went directly to Dr. Handal's contention that Claimant's symptoms were caused by scar tissue and not recurrent disc herniations. C.R., Item No. 12, F.F. No. 13(a) n.2. Thus, the WCJ correctly determined that the report was within the proper scope of Dr. Radcliff's rebuttal testimony.

12

Regarding Employer's hearsay argument, Section 422(b) of the Act provides that "**the records kept by a hospital of** the medical or **surgical treatment given to an employe** in such hospital **shall be admissible as evidence of the medical and surgical matters stated therein**." 77 P.S. § 835 (emphasis added).[11] Our courts have long recognized the rule that hospital records are admissible as an exception to the hearsay rule. Employer has not asserted that the pathology report does not constitute a medical or hospital record under Section 422(b) of the Act.

As to Dr. Radcliff's discussion of the pathology report during his sworn deposition testimony, we note that *Primavera v. Celotex Corporation*, 608 A.2d 515 (Pa. Super. 1992), a decision cited frequently by this Court,[12] addressed the extent to which an expert could rely on information generated by other professionals who are not subject to cross-examination. *Primavera* reiterates the "well-settled exception to the hearsay rule," which permits an expert to testify regarding the contents of

---

[11] Added by the Act of June 26, 1919, P.L. 642. Section 422(b) of the Act is distinguished from Section 422(c) of the Act, which governs the submission and admissibility of medical opinion reports based on whether a claim for compensation exceeds 52 weeks of disability. 77 P.S. § 835. Section 422(c) aims to promote efficiency in the administration of claims for short-term benefits by permitting the introduction of medical evidence by means of written report where the period of disability is 52 weeks or less. *Weaver v. Workers' Comp. Appeal Bd. (State of the Art, Inc.)*, 808 A.2d 604, 607 (Pa. Cmwlth. 2002). Where a claimant's disability has exceeded 52 weeks, and the opposing party objects, medical reports cannot be introduced without supporting medical testimony to prove disability or recovery from disability. *Id.* at 606-07. Section 422(c) bars proof **by medical report alone** where the disability has exceeded 52 weeks and the opposing party objects. *Id.* (emphasis added). Instantly, the limitations set forth in Section 422(c) are inapplicable because Claimant presented supporting medical testimony from Dr. Radcliff.

[12] *See Tyson Shared Servs., Inc. v. Workers' Comp. Appeal Bd. (Perez)*, 225 A.3d 1212, 1220 n.8 (Pa. Cmwlth. 2020) (medical witness could express an opinion based on the medical records of others, provided they were records customarily relied on by medical profession) (citing *Primavera*); *Drummond v. Workers' Comp. Appeal Bd. (Leadership Learning Partners)* (Pa. Cmwlth., No. 2210 C.D. 2014, filed Nov. 17, 2015) (medical expert's testimony is excluded from operation of the hearsay rule where expert based his opinion on the data or opinion of another).

13

reports upon which they relied in reaching a professional conclusion. *Id.* at 518. "The fact that experts reasonably and regularly rely on this type of information merely to practice their profession lends strong indicia of reliability to source material, when it is presented through a qualified expert's eyes." *Id.* at 521. An expert is not permitted, however, to simply repeat another's opinion or data without bringing to bear his own expertise and judgment. *Id.*

Instantly, Dr. Radcliff did not merely parrot the contents of the pathology report and the conclusion set forth therein. Rather, he ordered, per his "standard custom and practice," the pathology report as a means of confirming his opinion that he removed herniation material during the April 16, 2019, surgery. C.R., Item No. 27, Radcliff Dep., 2/19/20, at 42, 43. Moreover, Rule 803 of the Pennsylvania Rules of Evidence sets forth the exceptions to the hearsay rule, regardless of whether the declarant is available as a witness. Pa.R.E. 803. Rule 803(4) provides an exception for statements that are made for medical treatment, or diagnosis in contemplation of treatment, and that describe "medical history . . . or diagnosis in contemplation of treatment."[13] Ultimately, the purpose of the pathology report was to confirm whether Claimant suffered a recurrent disc herniation or whether his symptoms were caused by scar tissue. Based on the foregoing discussion, the WCJ did not err in overruling Employer's hearsay objection.

## B. The Penalty Petitions

Finally, we address whether the WCJ erred in imposing penalties. Section 435(d)(i) of the Act authorizes the assessment of penalties against an employer that

---

[13] While Rule 803(4) does not apply to statements made for purposes of litigation, there is no evidence to suggest the pathology report was requested or prepared in anticipation of litigation, as Dr. Radcliff was Claimant's treating physician for his prior back injury and he requested the pathology report as part of his "standard custom and practice." C.R., Item No. 27, Radcliff Dep., 2/19/20, at 42, 43.

14

violates the Act or the Department's regulations in an amount "not exceeding [10%] of the amount awarded and interest accrued and payable[.]" 77 P.S. § 991(d)(i). In cases of unreasonable or excessive delays, the amount of the penalty may be increased to 50%. *Id.* Section 413(b) of the Act[14] provides that an insurer suspending a claimant's WC benefits without first submitting an agreement or supplemental agreement to that effect "shall be subject to penalty as provided in [S]ection 435" of the Act. The assessment of penalties is within the WCJ's discretion, which this Court will not disturb absent an abuse of discretion. *Cleveland Bros. v. Workers' Comp. Appeal Bd. (Hazlett)*, 57 A.3d 199, 203 (Pa. Cmwlth. 2012).

An employer that is obligated to pay WC benefits may only cease paying such benefits when one of the following circumstances has been met: (1) a supplemental agreement has been submitted pursuant to Section 408 of the Act;[15] (2) a final receipt signed by the claimant has been submitted; (3) a WCJ has issued an interlocutory order granting discretionary supersedeas;[16] (4) a petition to suspend WC benefits has been filed with an accompanying affidavit from the insurer that the claimant has returned to work at no wage loss;[17] or (5) a WCJ has issued a final order terminating a claimant's benefits. *Erie Ins. Co. v. Workers' Comp. Appeal Bd. (Com. of Pa.)*, 203 A.3d 1143 (Pa. Cmwlth. 2019).

Instantly, Employer availed itself of the first option by submitting the First Supplemental Agreement, which predicated the suspension of Claimant's WC

---

[14] Added by the Act of February 8, 1972, P.L. 25, 77 P.S. § 774.1.

[15] Added by the Act of June 26, 1919, P.L. 642, 77 P.S. § 1001.

[16] Sections 413(a.1) and 413(a.2) of the Act, 77 P.S. § 774.

[17] Section 413(c) of the Act, added by the Act of July 1, 1978, P.L. 692, 77 P.S. § 774.

15

benefits on his return to work.[18] The question for this Court is whether that document insulates Employer from the imposition of penalties under Section 435(d)(i), irrespective of the circumstances behind its execution and the accuracy of the information contained therein.

Employer argues that the WCJ erred in granting Claimant's Penalty Petitions, as the record does not establish that Employer violated any provision of the Act or the Department's regulations. Moreover, Employer submits that both the WCJ's and the Board's decisions imply that Employer engaged in fraud when executing the First Supplemental Agreement. Employer contends that such an implication is baseless, given that Claimant signed an agreement he knew was inaccurate since Claimant was aware he was not immediately returning to work. In support of its penalty argument, Employer relies on *National Rolling Mills v. Workmen's Compensation Board (Jennings)*, 575 A.2d 953, 955 (Pa. Cmwlth. 1990), in which this Court upheld the termination of a claimant's WC benefits under a supplemental agreement that alleged his full recovery from a work injury, despite the absence of medical evidence to that effect.

Employer's reliance is misplaced, as *National Rolling Mills* is readily distinguishable. The claimant in *National Rolling Mills*, George Jennings (Jennings), similarly signed supplemental agreements with his employer that affected his receipt of WC benefits. Jennings subsequently filed a review petition alleging, in relevant part, that Jennings' employer fraudulently induced him to sign the supplemental agreements, the second and third of which contained incorrect information, and

---

[18] Given that Claimant had not, in fact, returned to work, Employer presumably could not obtain from its insurer an affidavit to the contrary.

16

requesting the imposition of penalties. A workers' compensation referee[19] awarded Jennings benefits, but concluded that no fraud had occurred. One of the issues Jennings presented in his appeal to this Court was whether the referee erred in failing to impose penalties. This Court declined to address that issue after concluding it was waived, as Jennings failed to pursue it before the referee, despite having raised the issue in his petition. It is also noteworthy that Jennings did not challenge the accuracy of information set forth in the first supplemental agreement, which suspended his benefits based on his full recovery; rather, Jennings simply alleged that his employer fraudulently induced him to sign the agreement. Therefore, *National Rolling Mills* does not control our disposition in the instant matter.

Equally unpersuasive is Employer's insistence that its conduct is excused by Claimant voluntarily signing the First Supplemental Agreement. This Court addressed a similar issue in *Kraeuter v. Workers' Compensation Appeal Board (Ajax Enterprises, Inc.)*, 82 A.3d 513, 519 (Pa. Cmwlth. 2013). In *Kraeuter*, we held that an insurer's claims adjustor fraudulently prepared a final receipt stopping the payment of WC benefits based on an erroneous representation that the claimant was able to return to work with no loss of earnings. During his testimony before the WCJ, the claims adjustor conceded that he prepared the final receipt based on the employer's wage statements from the previous year and that he ignored a recent report from the claimant's physician indicating that she had not fully recovered from her work injury. We concluded that this evidence supported the WCJ's exercise of discretion in imposing a 50% penalty for the employer's unreasonable and excessive delays in paying compensation.

---

[19] The term "referee" in Section 401 of the WC Act, 77 P.S. § 701, was replaced with WCJ by the Act of July 2, 1993, P.L. 190.

In *Department of Corrections v. Workers' Compensation Appeal Board (Anderson)*, 765 A.2d 410, 412-13 (Pa. Cmwlth. 2000), we held that a supplemental agreement containing "patently false" information was null and void *ab initio* under Section 407 of the Act.[20]  In so holding, we noted that the parties were aware at the time of the agreement's execution that it falsely indicated the claimant had fully recovered from his work injury and was not entitled to further benefits.  *Id.* at 412. We recognized that, while parties could stipulate to the extent of a claimant's loss of earning power, such a stipulation was null and void if it was (1) false, and (2) adversely affected the substantive rights to which a claimant was entitled under the Act.  *Id.*  Because the agreement unquestionably affected the claimant's substantive rights, we concluded that it was null and void.  *Id.* at 413.

Instantly, there is no dispute that Claimant had not returned to work at the time he signed the First Supplemental Agreement.  The WCJ credited Claimant's testimony that he signed the First Supplemental Agreement, in part, because Dr. Radcliff had released him to full-duty work and Claimant was concerned that his medical expenses would no longer be covered.  Furthermore, Claimant understood that his wage loss would be limited to a few months, as he anticipated returning to the Academy in February 2019.  Employer presented no evidence to contradict Claimant's testimony.

However, Claimant did not return to the Academy, as his work-related symptoms recurred at that time.  Employer would have been apprised of that fact by April 8, 2019, at the latest, when Claimant initiated the instant litigation.  In

---

[20] Section 407 of the Act provides in relevant part that any agreement between an employer or insurer and a claimant that permits a "commutation of payments contrary to the provisions of [the Act], or varying the . . . period during which compensation shall be payable as provided in [the Act], shall be wholly null and void."  77 P.S. § 731.

18

imposing penalties, the WCJ noted that Employer prepared the Second Supplemental Agreement reinstating Claimant's benefits several months later. As a result, the WCJ found that Employer "violated the Act when it secured the [First] Supplemental Agreement suspending [Claimant's] benefits as of November 19, 2018, despite the fact that Claimant had not returned to work." C.R., Item No. 12, WCJ Decision, F.F. No. 15(d). This case falls squarely under our holding in *Anderson.* Both Employer and Claimant were aware that Claimant had not returned to work at the time the First Supplemental Agreement was executed. As that document acted to suspend Claimant's WC benefits, it clearly affected Claimant's substantive rights under the Act. Accordingly, the First Supplemental Agreement was void *ab initio* and unenforceable. In the absence of a valid agreement suspending Claimant's WC benefits, Employer violated Section 413(b) of the Act when it ceased paying Claimant's WC benefits, as provided in the NCP.[21]

Furthermore, Employer unquestionably violated the Act when it failed to honor its payment obligations under the Second Supplemental Agreement, executed pursuant to 34 Pa. Code § 121.17(b). A claimant is entitled to statutory interest on all due and unpaid compensation. *Cleveland Bros.*, 57 A.3d at 203 (citing Section 406.1(a) of the Act, 77 P.S. § 717.1(a), added by the Act of February 8, 1972, P.L. 25). The failure to make past-due payments need not be intentional to support the

---

[21] While neither the WCJ nor the Board explicitly concluded that Employer engaged in fraud when executing the First Supplemental Agreement, Employer's actions in this matter are worthy of chastisement, at the least. Because Dr. Radcliff had released Claimant to return to work, Employer could have filed a petition requesting the termination or suspension of Claimant's benefits. Instead, Employer prepared the First Supplemental Agreement and secured the signature of Claimant, who was unrepresented by counsel at the time and concerned about the loss of his medical benefits, thus evading its statutory duty to pay Claimant's wage loss benefits until such a time as he returned to the Academy. As we have concluded that the First Supplemental Agreement is null and void, we need not review whether Employer's actions were fraudulent or merely unwise.

19

award of penalties. *See Graphic Packaging, Inc. v. Workers' Comp. Appeal Bd. (Zink)*, 929 A.2d 695, 701 n.10 (Pa. Cmwlth. 2007) (noting that "there is no requirement that the employer must have knowingly violated the Act before penalties may be imposed"). Thus, even if a clerical error is to be blamed, the WCJ did not err in granting the Second Penalty Petition.

For the reasons outlined above, we discern no error in the WCJ's exercise of discretion in granting Claimant's penalty petitions and we will not disturb his decision in that regard.

## IV. Conclusion

We discern no error in the Board's decision to affirm the WCJ, as his finding that Claimant sustained additional injuries as a result of the July 30, 2018 work injury is supported by substantial evidence, and he did not err in overruling Employer's objections to Dr. Radcliff's testimony regarding the pathology report, or to the admission thereof. Furthermore, the WCJ did not abuse his discretion in awarding penalties pursuant to Section 435(d)(i) of the Act, 77 P.S. § 991(d)(i). Accordingly, we affirm the Board.

_____
ELLEN CEISLER, Judge

20

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police,        :
              Petitioner      :
                                  :
         v.                 : No. 951 C.D. 2021
                                  :
Michael Tilton (Workers'     :
Compensation Appeal Board),  :
             Respondent   :

## O R D E R

AND NOW, this 21st day of July, 2022, the Order of the Workers' Compensation Appeal Board (Board), dated July 28, 2021, is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police,         :
                   Petitioner       :
                                     :
          v.                    :  No. 951 C.D. 2021
                                     :  Submitted: February 18, 2022
Michael Tilton (Workers'       :
Compensation Appeal Board),    :
                     Respondent    :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                  HONORABLE ELLEN CEISLER, Judge
                  HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

CONCURRING OPINION
BY JUDGE WALLACE                              FILED: July 21, 2022

I respectfully concur in the outcome of the majority's opinion but disagree that the pathology report was admissible. Although our courts have offered minimal guidance on the interpretation of Section 422(b) of the Workers' Compensation Act,[1] case law regarding hospital records in other contexts instructs that the records are admissible to "show the facts of hospitalization, treatment prescribed, and symptoms given." *B.E. v. Dep't of Pub. Welfare*, 654 A.2d 290, 292 (Pa. Cmwlth. 1995) (citing *Pothier v. Dep't of Transp., Bureau of Traffic Safety*, 511 A.2d 939 (Pa. Cmwlth. 1986)) (interpreting the Uniform Business Records as Evidence Act, 42 Pa.C.S. § 6108). Opinion evidence, such as a diagnosis, is inadmissible. *Williams v. McClain*,

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of June 26, 1919, P.L. 642, 77 P.S. § 835.

520 A.2d 1374, 1376-77 (Pa. 1987) (citing *Commonwealth v. DiGiacomo*, 345 A.2d 605 (Pa. 1975)); *see also* Pa.R.E. 803(6), cmt. (noting that the business records exception "applies to records of an act, event or condition, but does not include opinions and diagnoses"). This exclusion is consistent with the language of Section 422, which lists the terms "treatment" and "diagnosis" separately in Section 422(c), signifying that they denote distinct concepts. *See* 77 P.S. § 835 (providing for the submission of "a certificate by any health care provider as to the . . . treatment, diagnosis . . . and extent of disability, if any . . . .").

Here, the disputed pathology report is expressly diagnostic in character. The report states, "Pre-Op Diagnosis: 'Lumbar radiculopathy' Final diagnosis: L4-5 disc, excision: -Consistent with disc . . . . Final Diagnosis performed by William Todd, M.D." Reproduced Record at 455a (emphasis and some capitalization omitted). Thus, I conclude that Section 422(b) does not permit its admission as a record "kept by a hospital of the medical or surgical treatment given to an employe in such hospital . . . ." 77 P.S. § 835. It is important to add that the report is inadmissible under Section 422(c) as well, because this matter involves a claim of greater than 52 weeks of disability, and the opposing party objected. *Id.* ("Where any claim for compensation at issue before a workers' compensation judge exceeds [52] weeks of disability, a medical report shall be admissible as evidence unless the party that the report is offered against objects to its admission.").

The remaining two justifications for admission of the pathology report in the majority's opinion are also unpersuasive. Although an expert may base his or her opinion on otherwise inadmissible documents, the Rules of Evidence do not permit the admission of a document solely because an expert relied on it. This Court has explained, for example, "[w]hen an expert testifies about underlying facts and data

that support the expert's opinion and the evidence would be otherwise inadmissible, the trial judge," shall or may, depending on the circumstances, "instruct the jury to consider the facts and data only to explain the basis for the expert's opinion and not as substantive evidence." *Wenger v. West Pennsbro Twp.*, 868 A.2d 638, 645 n.13 (Pa. Cmwlth. 2005) (citing Pa.R.E. 703, cmt.). Regarding Rule 803(4), this hearsay exception applies where the declarant makes a disputed statement for purposes of medical treatment or diagnosis "and . . . describes medical history, past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, **insofar as reasonably pertinent to** treatment, or diagnosis in contemplation of treatment." Pa.R.E. 803(4) (emphasis added). The majority's opinion omits "insofar as reasonably pertinent to" and thereby misconstrues Rule 803(4) to permit the admission of a diagnosis. The pathology report does not fit this exception.

Despite this, I conclude that substantial evidence would support the findings of the workers' compensation judge even without the pathology report, and that any evidentiary misstep was harmless. I therefore concur.

_____
STACY WALLACE, Judge